### KNAPP v. HALL.

*(Supreme Court, Special Term, Monroe County. August 22, 1892.)*

1. VENDOR AND PURCHASER—RESTRICTIONS—ORAL REPRESENTATIONS.

A plat owner sold lots to sundry grantees on oral representations that all the lots in the plat should be sold subject to certain restrictions as to building and uses, which restrictions were set forth in the contracts and deeds for each lot sold. *Held*, that a subpurchaser, whose deed contained these restrictions, and who was repeatedly told by the plat owner's agent that the restrictions covered the whole tract, must be taken to have purchased in reliance on such representations.

2. SAME—NOTICE OF RESTRICTIONS.

The plat owner had reserved two lots, but did not distinctly state their exemption from such restrictions, and his agent continued to state, on one occasion in his presence, that the restrictions covered the whole tract. *Held*, that a subsequent purchaser of these two lots, on the plat owner's assurance that they were unaffected by these restrictions, who had actual knowledge that every other lot had been sold subject to them, as also was patent to his observation, and made some inquiries, but not of parties who knew the precise facts, *e. g.*, the owners of other lots, preferring to rely on assurances of his grantor's liability for any violation of the agreement as to restrictions, took with notice of the existence of such equities.

Action by Homer Knapp against Leo J. Hall to restrain defendant from proceeding with the erection of a building. Judgment for plaintiff.

In August, 1887, Fred. S. Minges and Cass Williams were the owners of a tract of land in the city of Rochester, lying between Hayward and Schanck avenues, known as the "Beechwood Tract," and which they subdivided into 117 city lots. A map or plan of such tract, as thus subdivided, was subsequently made and filed in the clerk's office of Monroe county, and the lots were then placed upon the market; the firm of Culver & Crane, real-estate agents, being employed to conduct the sale thereof. In order to induce parties to purchase the lots in this tract, and to enhance the value of the same, it was stated that said lots were sold subject to certain conditions and restrictions, one of which was that the houses to be erected thereon should stand not less than 15 feet from the front line of each lot, and another was that no liquors of any kind were to be sold upon any of the lots within the tract for the period of 50 years. On the 5th day of October, 1888, one James Marden purchased four of these lots, including lot No. 76, which last-mentioned lot he conveyed to the plaintiff on the 18th December, 1890. When any of these lots were sold the conditions and restrictions above specified were set forth in the contracts and deeds, and the same were contained in the deed of lot 76. on the 10th day of April, 1891, the defendant purchased lots 77 and 78 adjoining the plaintiff's lot, and lying west of Chamberlain street, all the other lots west of that street having been theretofore sold. The defendant's deed contained no conditions or restrictions such as were contained in the deeds of the other lots, and he was told by Minges at the time of making the purchase that these particular lots were relieved from such conditions. Shortly after obtaining title, defendant proceeded to erect a building upon lot 78, and caused the front wall thereof to be placed within seven feet of the line of East Main street, which was formerly Schanck avenue. This action is brought to restrain defendant from proceeding with the construction of his building upon any plan which shall bring the front wall thereof nearer than 15 feet to the street line.

*John F. Dorthy*, for plaintiff.    *Theodore Bacon*, for defendant.

ADAMS, J.   The principal questions which are presented upon the trial of this action have been passed upon by the general term in considering an appeal from an order denying defendant's motion to vacate a temporary injunction, and the rule of law which must control in actions of this character is very clearly stated in the opinion of Mr. Justice LEWIS.   17 N. Y. Supp. 437.   While conceding that, as a general proposition, it may be assumed that the owner of lands may impress upon them any servitude or easement he may deem proper; that, having done this, he may convey them to others charged therewith; and that a purchaser with notice of the existing equity takes subject thereto, notwithstanding his legal title may be unaffected and absolute,—the learned court nevertheless takes occasion to say that, as between these parties, it should be made clearly to appear—*First*, that the plaintiff made his purchase in reliance upon the restrictions and conditions alleged; and, *secondly*, that the defendant took his title with notice, either expressed or constructive, of the existence of such equities; and furthermore, that the determination of these two vital points should be made to rest upon evidence which is substantial and satisfactory, and not upon such as is "shadowy and uncertain."   With these controlling principles clearly in view, it becomes, therefore, the duty of this court to ascertain wherein, if at all, the evidence taken upon the trial varies from that which was furnished by the papers and upon the motion above referred to.

In respect to the first proposition, it may be stated as a fact in the case, which is now undisputed, that not only did the plaintiff and Marden purchase lot No. 76 subject to the restriction as to the building line, but that all the other lots in the tract sold prior to defendant's purchase were impressed with a like servitude; and this alone would, I think, create a presumption that plaintiff and his grantor took title to the lot in question, relying upon the assurance that this equity was one which attached to all the land within the tract, and would be enforced against each lot sold.   But in addition to this fact it appears that Culver & Crane represented to the purchasers of these lots that they were all to be sold subject to covenants as to building and liquor selling, and plaintiff testifies that Culver stated to him repeatedly that the restrictions covered the entire tract, and that it was upon the faith of these representations he was induced to purchase and build a residence upon lot 76.   This evidence is not without substantial corroboration, and, as it is not contradicted, it may now be safely assumed that the first proposition, viz., that plaintiff made his purchase in reliance upon the restrictions and conditions alleged, is clearly and satisfactorily established.

The remaining question is possibly involved in more doubt, but, nevertheless, I am irresistibly led to the conclusion that when the defendant became the owner of lots 77 and 78 he knew, or had reasonable cause to believe, that they were impressed with the same servitude or equity as attached to the other lots of this tract.   It is true that the witness Minges swears that, after placing the tract with Culver & Crane for them to dispose of the lots, he reserved these two lots, and gave directions that for the present, at least, they were not to be sold; and it likewise appears that he assured defendant, when he made the purchase, that they were unaffected by the restrictions which applied to the other lots; but it does not appear, at least by satisfactory evidence, that when they were reserved upon the map anything was said as to their exemption from such restrictions; and it seems that Culver & Crane continued thereafter to assure purchasers, and in one instance, at least, in Mr. Minges' presence, that these restrictions covered the entire tract.   But the most conclusive evidence upon this point is defendant's own admission, upon his cross-examination, that when he purchased lots 77 and 78 he knew that all the other lots had been sold subject to restrictions.   With

this information in his possession, the duty was certainly imposed upon defendant of ascertaining whether or not the restrictions which applied to the other lots in any manner affected those he was negotiating for, and this notwithstanding the assurances he had received from Minges. He says he did inquire of a person by the name of Agrain, and also of Williams, but he appears to have scrupulously avoided making any inquiries of parties who were in a position to know the precise situation of affairs. Had he spoken to the owners of adjoining lots, he might easily and speedily have ascertained that they had made their purchase upon assurance that all the lots were to be restricted alike, and his omission of this plain duty, it seems to me, establishes such negligence on his part as cannot be attributed to an ordinarily prudent man, and consequently charges him with the knowledge he ought to have possessed. *Williamson* v. *Brown*, 15 N. Y. 354; *Baker* v. *Bliss*, 39 N. Y. 70; *Bank* v. *Delano*, 48 N. Y. 326; *Ellis* v. *Horrman*, 90 N. Y. 466.

But, in my view of the case, it is unnecessary to resort to the rule of law which, under circumstances such as are here made to appear, creates a presumption of knowledge, for it is impossible to resist the conclusion that defendant bought with actual knowledge of the situation. As has been stated, he knew that every other lot in the tract had been sold subject to certain restrictions. He saw that all the houses which had been erected were at least 15 feet from the line of the street, and to an ordinarily intelligent person it must have occurred that a restriction as to the building line or the selling of liquor would not be much of an inducement to the purchaser of lot 76, or of any other lot in the tract, if such restrictions were not common to all lot owners, or if the owner of lots 77 and 78 was to be permitted to erect a saloon flush with the street line. It may be claimed that these are mere circumstances which may or may not tend to prove actual knowledge, but additional, and perhaps more satisfactory, proof is furnished by the defendant's own declarations. When the deeds of his lots were being drawn by the witness Widener, he asked him if he would get himself into trouble by taking these lots without restrictions, knowing that all the others had been sold with restrictions, and his disturbed state of mind was not set at rest until he received assurances that his grantors would be liable for any violation of the agreement in respect to restrictions. Again, in April and immediately following his purchase, defendant stated to plaintiff that he knew of the restrictions upon the Beechwood tract before he purchased, but that he had paid a big price for his lots, and he proposed to utilize them as he saw fit. Other evidence might be referred to which tends to strengthen plaintiff's contention, but I think it has already been made to appear that the case varies in several essential particulars from the one passed upon by the general term, and that the whole evidence very clearly establishes both the propositions which that court says must be established before plaintiff is entitled to the relief sought. If this be so, it follows, within well-recognized authorities, that plaintiff may invoke in his behalf the rule of law which holds that a purchaser of land under a deed containing no conditions may nevertheless take subject to certain parol restrictions made to others by his grantor, where he had knowledge or the opportunity to know of such restrictions before making his purchase. *Tulk* v. *Moxhay*, 11 Beav. 571; *Hills* v. *Miller*, 3 Paige, 254; *Barrow* v. *Richard*, 8 Paige 351; *Tallmadge* v. *Bank*, 26 N. Y. 105; *Trustees* v. *Lynch*, 70 N. Y. 440. It results from these observations that plaintiff is entitled to judgment restraining defendant from proceeding with the erection of his building, and judgment therefor, with the costs of the action, is therefore directed.