**WILSON CO. et al. v. GORDON et al.
(No. 7928.)**

(Court of Civil Appeals of Texas.  Galveston.
June 29, 1920.  Rehearing Denied
Oct. 7, 1920.)

1. **Judgment ⬅=>251(1)—Decree against selling
lots without restricting use as agreed proper
where future intent shown, though not spe-
cifically pleaded.**

In a suit to restrain the sale of lots in a
subdivision in violation of agreement to include
restrictions in the deeds to such lots, where it
was undisputed that defendant had sold one lot
without the restrictions, and the jury found
that it would sell other lots without restric-
tions, it was not error to grant the injunction,
though the petition did not specifically charge
an intent to sell lots in the future without the
restrictions.

2. **Injunction ⬅=>128—Evidence held to sustain
finding of knowledge by purchaser of general
restrictions in subdivision.**

Evidence that the purchaser for a business
purpose of a lot in a restricted subdivision had
negotiated for the purchase of other lots in
the subdivision which he knew were restricted,
that the restrictions had been generally adver-
tised, and that he purchased at the same time
two other lots which were subject to the re-
strictions, *held* to sustain finding that he knew
of the general agreement with lot purchasers
that all lots in subdivision should be subject to
the same restrictions.

3. **Covenants ⬅=>103(3) — Permitting tempo-
rary building as real estate office not acquies-
cence in violation of restriction.**

The fact that the purchasers of lots in a
restricted residential subdivision made no ob-
jection to a temporary building on one lot used
as a real estate office by the owners of the sub-
division, and later occasionally used for elec-
tions, schools, and social gatherings, does not
establish acquiescence in the use of that lot for
business purposes.

4. **Frauds, statute of ⬅=>158(2)—Restrictions
on lots in subdivision may be proved by pa-
rol.**

Where lots within subdivision were sold by
deeds containing certain restrictions as to their
use under an agreement that all other lots in
subdivision when sold would be similarly re-
stricted, the purchaser acquired an equity to re-
quire the restrictions in deeds to lots subse-
quently sold which was not an interest in lands
and which can be proved by parol evidence.

5. **Evidence ⬅=>424—Parol representations as
to restrictions admissible against subsequent
purchaser with knowledge.**

Parol representations by the owner of a
subdivision to lot purchasers that all subse-
quent conveyances of lots would contain certain
restrictions are admissible against a subsequent
purchaser who was found to have had knowl-
edge of the restrictions in conveyances of other
lots at the time he made his purchase.

6. **Appeal and error ⬅=>207—Objection to argu-
ment without request for court action suffi-
cient to authorize review.**

An objection to the argument of an attor-
ney without a request that the court repress
the argument or instruct the jury to disregard
it is sufficient to authorize review of the argu-
ment on appeal.

7. **Appeal and error ⬅=>1060(1)—Argument of
attorney not influencing verdict held not re-
versible.**

In a suit against the vendor and purchaser
of a lot in restricted subdivision to restrain the
use of the lot contrary to the restriction, an
argument that plaintiff's counsel, in connection
with his argument that the purchaser had ac-
tual and constructive notice of the restrictions,
stated that he could recover the money paid
from the other defendant under the general
warranty, was not reversible error, since the
court cannot say that it influenced the jury to
find against the defendants.

8. **Trial ⬅=>219—Definition of constructive no-
tice unnecessary where term is not used.**

Where the court submitted correct issues as
to whether defendant knew facts which would
put a prudent man on inquiry as to restrictions
and whether reasonable inquiry would have
disclosed the restrictions without using the
term "constructive notice," it was not error to
fail to define that term in the restrictions.

Appeal from District Court, Harris Coun-
ty; Chas. E. Ashe, Judge.

Action by Sol Z. Gordon and others against
the Wilson Company and another.  Judgment
for plaintiffs, and defendants appeal.  Af-
firmed.

Baker, Botts, Parker & Garwood and A. R.
& W. P. Hamblen, all of Houston, for appel-
lants.

Homer E. Stephenson and C. D. Ferguson,
both of Houston, for appellees.

GRAVES, J.  The facts and issues in this
cause material to a disposition of the appeal
may be thus epitomized:

In 1907 Woodland Heights addition to the
city of Houston, under a recorded map and
plat thereof showing it to be divided into
lots, blocks, and dedicated streets and alleys,
pursuant to the adoption, publication, and
advertisement by its then owners of a gener-
al plan for its development and sale as an
exclusively residential district, was put upon
the market.  For 12 years the successive
owners of the addition carried out, con-
sistently observed, and sold lots only in con-
sonance with this general plan until about
90 per cent. of the total lots in the entire
addition had been so sold, publicly advertis-
ing it as a strictly residential restricted
district, and representing to many different
buyers at the time of and before the sales
were made to them that it was such, and
that the deeds to all other purchasers would

⬅=>For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

contain restrictions of the same character as were inserted in their own, which in substance were as follows: On each street residences were to be built a certain distance from the property line, uniform minimum cost of construction was to prevail, all houses were to be built and used for residence purposes only, no saloon, livery stable, blacksmith shop, or any kind of trade or business whatsoever should be carried on or permitted upon the premises, nor should they be occupied by any person of African descent, and no vinous, spirituous, or malt liquors should ever be sold or exposed for sale thereon.

On January 15, 1919, however, the Wilson Company, successor in title to all prior owners of the unsold portions of the property, by deed of that date sold to E. G. Siadous lots 1, 2, and 3 in block 1 of the addition, in which as to lot 1 the restriction pertaining to the construction of a residence only was dispensed with, and that relating to liquors was changed to read as follows:

"(95) No vinous, spirituous or malt liquors shall ever be sold or exposed for sale on said premises, except for medicinal purposes."

The avowed purpose of Siadous in buying this property was to put up a drug store and apartment house on lot 1, which was perhaps the most prominent location in the entire addition; his intended use of it having been known to and discussed by him with the company before the sale. Its single conveyance of the three lots to him was in the form of a general warranty, but a lien was therein expressly reserved against them all to secure $2,900 of unpaid purchase money.

Thereupon Sol Z. Gordon and other owners of lots and homes within the addition brought this suit against Siadous and the Wilson Company, setting up the facts already recited, which they charged Siadous with having had full knowledge of before and at the time he so bought, averring their interest in the matter to have arisen from and to then exist by virtue of having themselves bought and paid a largely enhanced price as a result of and in reliance upon these facts and representations, and asking that Siadous be enjoined from erecting on any part of such property any other than a building for residence purposes, with such stables and outhouses as might be necessary for use in connection with a residence, and from carrying on or permitting upon the premises any kind of trade or business whatever. The closing part of the prayer was this:

"That upon final hearing hereof the rights, equities, and easements of petitioners in all of the said properties in the hands of defendants be established by decree of court, and that said defendants be perpetually enjoined from selling or conveying said properties or any portion thereof, except upon express agreement by the purchaser thereof to assume and abide by the restrictions heretofore assumed and imposed upon petitioners and the remainder of the property owners in said addition, and that they recover their costs and have such other and further relief, general and special, as they may be entitled to receive at law and in equity."

The Wilson Company answered with a general denial; specially denied that it had at any time represented to any of the plaintiffs or to any other lot owners in such addition that the deed to lot 1 in block 1 would contain restrictions identical with or similar to those contained in the deeds of the plaintiffs and other owners of property therein; also specially pleaded that at the time the addition was platted a small frame building had been erected upon lot 1, block 1, which for 10 or 12 years had been habitually and customarily used for business purposes exclusively, and never as a residence, having sometimes been used as a real estate office and at other times as a polling place, and still at other times as a place where a kindergarten was conducted; that the maps and other literature in circulation by the defendant the Wilson Company would sufficiently indicate that this particular lot had some sort of structure thereon, and that each and all of the plaintiffs had bought their property with the constructive knowledge, at least, that this lot was being used and would continue to be used for business purposes; that by reason of all of these facts, and by reason of the acquiesence by the plaintiffs in the use of the lot they were estopped to insist upon the observance of the restrictions with reference to it, and had waived any rights with regard thereto. The company further expressly disavowed any intention of selling any of the remaining lots in the addition with a waiver of the restrictions.

The defendant Siadous answered with a general denial, and specially pleaded that there had never been any restriction upon lot 1 in block 1, that the intention of the owners thereof had always been that there should ultimately be built thereon a drug store and apartment house, and further that, even if the defendant the Wilson Company and its predecessors in title had ever adopted and promulgated a plan whereby all of the lots in such addition would be used strictly for residential purposes, he had neither had actual nor constructive notice of such plan or intention, and that he bought lot 1 in block 1 in good faith and in ignorance of any such conditions or restrictions, being wholly ignorant of any representations that may have been made by the Wilson Company and its predecessors in title to the plaintiffs or other lot owners in the addition at the time they made their respective purchases of lots. He then substantially repeated his codefendant's plea of estoppel by reason of the alleged use of lot 1, block 1, for business purposes.

A temporary injunction was first granted, which remained in force until trial of the cause upon its merits before a jury upon special issues. These embodied inquiries upon substantially all the matters hereinbefore referred to, and on the jury's return of answers in accord with the contentions of the plaintiffs as to the facts about them the court entered final judgment in favor of some of them against Siadous restraining him from erecting the contemplated drug store. and in behalf of them all against the Wilson Company, enjoining it from in the future selling or conveying any property in the Woodland Heights addition without both expressly inserting in the deeds all the particular restrictions hereinbefore described and binding the grantees as purchasers to assume and abide thereby.

Both defendants appeal, making common cause in this court in attacking the judgment so rendered below.

They first insist that the separately presented requests for peremptory instructions in their favor should each have been granted by the trial court—the Wilson Company's because neither pleadings nor proof indicated that it intended or was threatening to sell other lots than those already deeded to Siadous, as to which conveyance the petition affirmatively showed no injunctive relief was sought, without inserting in the deeds the restrictions contended for; Siadous' on the ground of his alleged lack of prior knowledge, actual or constructive, of any restrictions against or any supposed verbal agreements of his vendor with other people touching the property he bought.

[1] We do not think the position maintainable as to either appellant. The appellees set up and abundantly proved ab initio the entire course of conduct and dealings of the Wilson Company and its different predecessors in ownership toward the public generally and themselves in particular with reference to the establishment and preservation of the addition as forever being an exclusively residential one, as well as the mutual observance of that character for it between all these successive owners and their vendees for an unbroken period of 12 years; also the accomplished fact of the actual sale and deed to Siadous in violation of the general plan and character theretofore so impressed upon the property, which transaction was still incomplete, in that the prescribed building had not yet been put up and the absolute title to the lots had not then passed from the appellant company to Siadous because of the retaining of the vendor's lien in its favor to secure much the greater portion of the purchase money. After this much, with other facts and circumstances not at this point necessary of mention, had been developed, although its officers had denied that it intended in the future to sell any more of the lots without the

224 S.W.—45

restrictions, appellant company requested and the court submitted to the jury this question:

"Does the Wilson Company in the future intend to sell any lots in Woodland Heights addition owned by it without inserting in the deeds conveying such property restrictions similar in character to the restrictions contained in the deeds to plaintiffs, Doyle and others?" To which they answered: "It does."

This particular finding, nowhere as such attacked as being unsupported by the evidence, added to those just above mentioned, and in the light of the pleadings outlined, certainly left the Wilson Company in no position to complain because it may not also have been formally and generally charged with intending in the future to do what the specific pleading and the undisputed proof showed it already had done; that is, to sell property in the addition without inserting in the deed the restrictions it had agreed to put there.

[2] The demand for a peremptory instruction, in so far as Siadous was concerned, rested, as stated, upon his claim of a lack of knowledge of the restricted character of the addition and of any verbal agreements with others about that or concerning what the deeds should contain, to which he added a plea that appellees had waived their right to complain of the use of lot 1, block 1, for business purposes by their acquiescence in such actual use of it from the year 1907 down until this trial. All these issues, however, except as to knowledge on his part of the alleged verbal agreements with other parties, were separately submitted to the jury and answered adversely to him. It is true he attacks the findings as lacking support, but after a careful review of the statement of facts we are unable to agree that evidence was lacking. It may be the direct proof as to his actual knowledge was somewhat weak, and that much as to that was left to inference on the jury's part from circumstances presented. It cannot be said, however, that these were insufficient, and the further conclusion that he knew enough to put an ordinary prudent man on inquiry is amply and clearly supported. Mr. Siadous was a druggist, and operated two drug stores on Houston avenue near Woodland Heights, one of them being located on the east side of that avenue facing and directly opposite to this addition, which he had conducted in that location for eight years immediately prior to this trial. He sold and delivered drugs all over the addition, had been through it, wanted to get as close to it as he could, and had often discussed that desire and the restrictions on the property with friends. During this eight years' time there had been nothing but homes built therein, it had grown to be quite a populous and beautiful residence section, and the public prints and local newspapers had fre-

quently contained extended advertisements specially featuring its high-class and exclusively residential character. About two years before this trial he and James Doyle had negotiations looking to the exchange of Mr. Doyle's two lots inside Woodland Heights for two Mr. Siadous owned outside of it. Mr. Doyle testified:

"I am personally acquainted with Mr. Siadous. I have known him for several years, I don't know how long; probably seven or eight years. Prior to January 1, 1919, I had a conversation with Mr. Siadous with reference to the restrictions in Woodland Heights. I went to Mr. Siadous about a year and a half or three years ago; I wanted to exchange a couple of lots I had for the couple he had outside of the addition, because my boys wanted to go into the automobile repair business, and I wanted a location for them to go into business. The lots that I owned in the addition were 8 and 9, and the lots Mr. Siadous owned were outside of the addition. I wanted to make a trade with Mr. Siadous on account of my lots being restricted, and he said he would not have any use for them, and I finally bought his lots. At the time I had that conversation with him we discussed the restrictions in Woodland Heights, and Mr. Siadous said that he would not have any use for the lots; that he didn't feel like he could live out there right then. My deeds had restrictions in them. When Mr. Siadous and I talked about the matter we talked about it being restricted, and I told him that I had two lots there, and that of course they were restricted and we could not run a business on them, and he said he didn't have any use for them; he said he wouldn't like to trade with me. That is all the conversation I now remember. I don't know just exactly what all the conversation was. We talked for a long time about it."

Likewise, during 1914, in a conversation about Mr. Siadous' buying this particular lot for the location of a drug store between him and W. A. Watson, secretary and salesman for the one of appellant company's predecessors owning the addition at that time, according to Mr. Watson, this occurred:

"I recall a conversation I had with Siadous some four or five years ago with reference to this particular property. I called on him to sell him some stuff that we had over on the side, some lots we had over on the other side, and he said he didn't want any on that side of the street, and that he would like to have something over there. I told him that possibly he could get that lot; that very likely we would fix it so he could use it for his purposes. I was discussing with him then the question of his probable purchase of this lot for use as a business establishment; that is what he wanted it for. * * * He and I discussed the restrictions on that lot at that time. We did not discuss restrictions as to other lots. He was figuring on a location for a drug store then."

It seems useless to catalogue further circumstances, though a number of others appear in the record. Indeed, the very terms of the conveyance he accepted, with two out of the three lots he was buying restricted to residential purposes, taken in connection with all the other facts and circumstances he admitted knowing, might well have called for further inquiry.

[3] The jury's additional finding that appellees had not waived their right to complain of the use of this lot 1 for business purposes by having acquiesced in any such actual and long-continued use of it is equally sustained in the proof. It was shown that a small temporary structure for the company's own purposes in selling the lots and carrying out the original plan for the property was put on the property line at the back end of this lot within a few months after the addition was first opened up; that use of it was subsequently discontinued, and the residents of the neighborhood then intermittently used it for holding elections, church festivals, kindergartens, etc.; at the time of the trial it had become much dilapidated, and for some time had not been used at all. Many resident lot owners testified to having always regarded it merely as a temporary means employed by the company in locally advertising the property as being for homes only, and no purchaser prior to Siadous gave evidence to the contrary.

There was no voluntary surrender of a right in this situation.

Appellants next say the trial court erred in permitting Doyle and others, over their objection, to testify that at and before their purchases of lots in Woodland Heights the Wilson Company and its predecessors in title represented to these persons that deeds to lots sold in the future would contain restrictions identical with those appearing in the deeds then given them, that the addition would never have within its limits any business establishments of any character, and that it would be an exclusively residential one. The grounds of the objection were that an interest in land cannot in Texas be conveyed by parol, nor, in the absence of fraud, accident, or mistake, is evidence of that nature admissible to vary, add to, or enlarge the terms of written deeds to land. A further protest in behalf of Siadous alone was based on the claim that, since the evidence failed to show that he had any knowledge of such parol representations, he could not be held bound by them.

[4] As we read this record, the principle applicable is that of estoppel in pais, and the statute of frauds thus appealed to does not stand in the way. There is not here involved any grant of an actual interest, title, or direct easement in the land itself of another, but simply a restrictive covenant against the use of any part of this property for other than residential purposes originating in the adoption, promulgation, and development by its promoters of a general plan looking to that result, accompanied by representations

and agreements that it should be forever so kept and maintained, which plan, and covenant having been in good faith accepted, acted upon, and observed by various purchasers, is mutually binding upon all at interest, and will in equity be equally enforced against the owners and all buyers having notice of the restrictions so imposed. Such covenants, although resting at least partly in parol, and mayhap not in a technical sense running with the land, have been quite generally upheld. The general rule on this subject and the reasons underlying it are well summarized in the note to Kern v. Campbell, 37 L. R. A. (N. S.) 27, under the head of "Building Schemes":

"The most familiar cases in which courts of equity have upheld the rights of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of property has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy. It may be assumed he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lots will be beneficial to both. The covenant or agreement between the owner and each purchaser is therefore mutual.

"Cases in this country and in England therefore uphold the doctrine that, although the legal title be absolute and unrestricted, yet the owner may, by parol contract with the purchasers of successive parcels in respect to the manner of its improvement and occupation, affect the remaining parcels with an equity requiring them also to be occupied in conformity to the general plan, which is binding upon a subsequent purchaser with notice."

Of the same import are these declarations from our Supreme Court in Harrison v. Boring, 44 Tex. 255:

"The owner of land may create an easement by a parol agreement or representation which has been so acted on by others as to create an estoppel in pais. As 'where he has by parol agreement granted a right to such easement in his land, upon the faith of which the other party has expended moneys which will be lost and valueless if the right to enjoy such easement is revoked, equity has enjoined the owner of the first estate from preventing the use of it.' Wash. on Eas. & Serv. 97, and numerous cases cited. * * *

"Where also the owner of a block of land sold off lots to divers persons, representing to each one separately in selling that a strip of eight feet front on the lots was to be left open, though no such reservation was made in the several deeds, and houses were built back of and leaving open said strip in front in pursuance of said representation, equity, at the instance of those who had so built, enjoined and restrained a purchaser of one of the lots who had commenced to build on the reserved strip. Al-

though there was no agreement that constituted a legal obligation, the representation that such was to be the plan of building on said block, made to each one in the sale of the lots, and acted on by some of them who had built in accordance with it, and upon the faith of its observance by the rest, conferred upon those who had thus built an easement upon each of their lots in reference to the said strip fronting on all of the said lots that a court of equity would recognize and enforce as a substantial right. Tallmadge v. East River Bank, 26 N. Y. 105. See other cases of same class in Wash. on Eas. & Serv. 97 to 106."

Likewise in the Tallmadge Case already referred to, 26 N. Y. 105, 6 N. Y. Ct. App. 33, this is said:

"From the facts found by the judge at Special Term, it appears that when the plaintiff Maxwell and others bought lots in St. Mark's place of Davis, they were shown the map or plan of St. Mark's place, showing that the houses on both sides of the place were to be set back eight feet from the street, and that they bought on the assurance of Davis that that plan should be observed in building on the place; that the strips of eight feet in width on both sides of the street should not be built upon, but kept open. It is to be presumed that they would not have bought and paid their money except upon this assurance. It is to be presumed that, relying upon this assurance, they paid a larger price for the lots than otherwise they would have paid. Selling and conveying the lots under such circumstances and with such assurances, though verbal, bound Davis in equity and good conscience to use and dispose of all the remaining lots so that the assurances upon which Maxwell and others had bought their lots would be kept or fulfilled. This equity attached to the remaining lots, so that any one subsequently purchasing from Davis any one or more of the remaining lots, with notice of the equity as between Davis and Maxwell and others, the prior purchasers, would not stand in a different situation from Davis, but would be bound by that equity."

See, also, Knapp v. Hall (Sup.) 20 N. Y. Supp. 42; case note in 21 Am. St. Rep. 484; Schermerhorn v. Bedell, 163 App. Div. 445, 148 N. Y. Supp. 896; Allen v. City of Detroit, 167 Mich. 464, 133 N. W. 317, 36 L. R. A. (N. S.) 801; Pomeroy on Equity (4th Ed.) vol. 4, §§ 1703–1705; Lowrance v. Woods, 54 Tex. Civ. App. 233, 118 S. W. 551; Hopper v. Lottman, 171 S. W. 270; Anderson v. Rowland, 18 Tex. Civ. App. 460, 44 S. W. 911.

[5] Under the doctrine applied in these authorities the covenant here, then, being valid and enforceable against both appellants, and Siadous having been found to have prior knowledge of the restrictions constituting its basis and sole subject matter, proof of it by showing the representations which made plain the nature of the compact as well as the acts and intent of its makers was likewise clearly admissible against both complainants. Johnson v. Elmen, 94 Tex.

168, 59 S. W. 253, 52 L. R. A. 162, 86 Am. St. Rep. 845; Mead v. Randolph, 8 Tex. 191.

Reversal is also asked on account of statements made in the concluding argument below by the attorney for appellees to the effect that the deed from the Wilson Company to Siadous was a warranty deed, and meant that, if the latter were enjoined from building a drug store and apartment house, he could get his money back and no one would be injured. The bill merely shows exception to these remarks on the part of appellants, not that repression of the argument or direction to the jury to disregard it was requested, and the court qualifies it by saying that the statements were made in connection with counsel's argument that Mr. Siadous had actual and constructive notice of the restrictions in Woodland Heights, including lot 1, his contention being that, if the company had given Siadous a general warranty deed, the matter might be adjusted between them according to whether Siadous did or did not have notice of the restrictions at the time of his purchase, since such a deed would cover incumbrances or restrictions then known to the parties to it, pursuant to whatever understanding they may have had, taken in connection with the consideration recited in the deed itself.

[6, 7] While under the authority of Telegraph Co. v. Perry, 95 Tex. 648, 69 S. W. 133, the matter in the condition presented is reviewable here, in view of the facts already found and recited, including the trial court's explanation of the setting and circumstances under which these comments were made, although they may have been improper, this court is unable to say the jury were influenced thereby in returning the verdict they did. Fain v. Nelms, 156 S. W. 281; Railroad Co. v. Flemming, 203 S. W. at page 108, column 2.

[8] Under the two last assignments presented it is argued that the trial court erred in failing to define the term "constructive notice" and in merely asking the jury to answer the question:

"Could the said Siadous by reasonable inquiry have ascertained the residential character of restrictions imposed upon the Woodland Heights addition?"

We think the criticism without force. The charge nowhere mentioned constructive notice, but first directed a finding on whether or not he had knowledge of such facts as would put an ordinarily prudent man upon inquiry as to this character of the restrictions, and then immediately submitted the issue complained of. The two questions, when considered together, really embody the essential elements of constructive notice, and contain all that was necessary.

The conclusions stated require the overruling of all assignments and an affirmance of the trial court's judgment. That order has been entered.

Affirmed.