SHARPSTOWN CIVIC ASSOCIATION,
INC., et al., Appellants,

v.

Ronald I. PICKETT, et al., Appellees.

No. A14–82–127CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 19, 1984.
Rehearing Denied Feb. 16, 1984.

Harvey A. Ford, Hofheinz, Harpold, Mc-Donald & Fitzgerald, Houston, for appellants.

Robert N. Hinton, Hinton & Taylor, Houston, for appellees.

Before J. CURTISS BROWN, C.J., and DRAUGHN and ELLIS, JJ.

## OPINION

DRAUGHN, Justice.

Appellants, Sharpstown Civic Association, Inc., and certain individual residents who are members thereof, sued to enjoin alleged violations of restrictive covenants prohibiting commercial use of land against appellees, Ronald I. Pickett and Auto Clean, Inc. (appellee or Pickett). The trial court entered judgment on the jury's verdict that enforcement of the covenants was barred by the statute of limitations and waiver. From which, appellants have perfected this appeal.

In nine points of error, appellants make three main contentions: (1) There is no evidence that both lots of the parcel have been used commercially; (2) The statute of limitations has not run because the commercial use has been discontinuous; and (3) There is no evidence that they waived enforcement of the deed restrictions. We affirm the judgment.

The concerned real property is described generally as Lots 1 & 2 in Block Forty-two (42) of Sharpstown Country Club Terrace, Section Two in Houston, Harris County, Texas. These two adjacent lots form an oddly-shaped triangular parcel with its base fronting north on Triola Lane, its two elongated sides tapering south to a needle-like point. The long west side parallels South Gessner Road, a four-lane divided roadway. The similarly long east side borders an eighty-foot drainage ditch easement which in turn adjoins a 150 foot utility easement. These two adjoining easements separate the east side of the parcel from the only neighboring residential lots.

Both adjoining lots which make up the concerned parcel were subject to deed restrictions which provided that the land be used for residential purposes only, and prohibited signs of any kind thereon except those not more than five feet square for advertising the property during construction. These deed restrictions were filed in 1960.

The seeds of this controversy were planted in 1969 when Robert Hill, a real estate developer, purchased these lots and moved a small office structure on Lot 1, of the two lot parcel. From this office, he conducted his real estate business until November, 1979 when he sold the property to appellee Pickett. Lot 2 of this parcel was maintained by Hill as a part of the whole and used for excess parking in connection with the business office. At one time during his ownership, Hill sold lots and homes within the concerned subdivision but his business was not exclusively for the purpose of selling the subdivision lots. Also, at various times, he shared the office with an insurance agent and an attorney.

Within a week after he purchased the property in 1979, appellee, Pickett, began conducting business on the property; and within thirty days, he erected a sign which advertised it as the future sight of an "Auto Clean" car wash. In line with these anticipated plans, he cleaned the land, obtained architectural drawings, a city building permit, and completed financing for the project. The appellants initially obtained in 1980 a temporary injunction against Pickett restricting the business use to lot one. However, in this trial for a permanent injunction the trial court entered judgment

on the jury's verdict and denied the permanent injunction. This appeal resulted.

In their first three points of error, appellants contend that the trial court erred by: (1) overruling their motion for judgment non obstante veredicto because there is no evidence that Lot 2, as distinguished from lot 1 of the two lot tract, was ever used for commercial purposes; (2) overruling their motion to disregard Special Issue No. 4 because there is no evidence Lots 1 and 2 have been used and maintained as one parcel; and (3) submitting Special Issue No. 4 to the jury because maintenance of Lots 1 and 2 as one parcel does not constitute a non-residential use of Lot 2. In essence, appellants contend that these two lots that make up an oddly-shaped triangular tract, which is largely isolated, island-like, from the rest of the subdivision by easements and a drainage ditch, should each be considered as a separate lot for purposes of applying the deed restrictions.

The record reveals that Special Issue No. 1 inquired of the jury, "Do you find from a preponderance of the evidence that the property was used for non-residential purposes?" The jury answered "we do" as to Lot 1, and "we do not" as to Lot 2. Special Issue No. 4 asked, "Do you find from a preponderance of the evidence that Lots 1 and 2 have been used and maintained as one parcel since the date on which non-residential use began?"; The jury answered "we do".

We are required to consider only favorable evidence and the inferences to be drawn therefrom which support the jury's verdict. *Quintero v. Citizens and Southern Factors, Inc.,* 596 S.W.2d 277, 280 (Tex.Civ.App.—Houston [1st Dist.] 1980, no writ). In so doing, we find that there is sufficient evidence to support the jury finding that both lots were used and maintained as one. Appellant contends, however, that the controlling question is whether Lot 2 was ever used for commercial purposes on its own, independent of Lot 1 where the office structure was located. We disagree. The history of these two lots reflects they were utilized, regarded, and conveyed as one parcel. The unique shape and location of this tract is no doubt partially responsible for this view. This two-lot tract is located apart from the common scheme of residential homes in the subdivision. It is bounded on two sides by well-traveled public streets and it is isolated from the nearest residential property on the east by a drainage ditch easement and a utility easement. When Hill purchased the property in 1969 and placed the office structure on Lot 1 for his real estate business, he said he bought both pieces of property together and subsequently treated the land as one parcel. Indeed, he testified that he did not know where the dividing line between the lots was located. The evidence before the jury further indicates that except for reference to a map or plat it would be virtually impossible to isolate the boundary line between these two lots.

In addition, Lot 2 was used for overflow parking space in connection with the original owner's business. Bob Carlson, the insurance agent who worked out of the office cut the grass and maintained both lots in return for a rent reduction. We find that the use of both lots for non-residential purposes was evidenced by the original owner and subsequently by Appellee-Pickett's using, mowing, maintaining and parking vehicles on the whole tract. There was, in short, some evidence of probative force to support the jury's findings. The jury is, of course, the sole judge of the weight to be given the evidence and of the inferences to be drawn therefrom, provided the inferences made are not unreasonable. *Lockley v. Page,* 142 Tex. 594, 180 S.W.2d 616, 618 (1944). The trial court did not err in overruling appellant's motion for judgment non obstante veredicto and in refusing to disregard Special Issue No. 4 relative to use and maintenance of both lots as one parcel. Accordingly, appellant's first three points of error are overruled.

Appellants contend in their fourth and fifth points of error that the trial court erred by overruling their motion for judgment non obstante veredicto and their motion to disregard the jury's answer to Spe-

cial Issue No. 3 because the business use on Lot 1 was not continuous and; therefore, suit was filed within the statute of limitations period. Appellants limited their discussion of these points to Lot 1 only. However, in view of our disposition of the first three points of error, these points are applicable to both lots as a parcel.

The jury answered "we do" as to Lot 1 in response to the inquiry as to whether the property was used continuously for non-residential purposes from the date the use began until suit was filed. Appellee-Pickett alleged, and the jury found, that the lawsuit was barred by the four-year statute of limitations. TEX.REV.CIV.STAT.ANN. Art. 5529 (Vernon Supp.1981).

In an imaginative, but unconvincing, argument, appellant maintains that, in determining when the statute of limitations begins to run, there is a distinction between types of business uses, and that the statute ceases to run when the use changes. Appellant asserts that Bob Hill's use from 1969 to 1979 was separate and distinct from appellee's use from 1979 until suit was filed, and that the statute of limitations began anew in November, 1979 when the building was used for a car wash office instead of a real estate business. Appellant cites three principal cases in support of these contentions: *Park v. Baxter*, 572 S.W.2d 794 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.); *Schoenhals v. Close*, 451 S.W.2d 597 (Tex.Civ.App.—Amarillo 1970, no writ); and *Arrington, et al. v. Cleveland, et al.*, 242 S.W.2d 400 (Tex.Civ.App. —Fort Worth 1951, writ ref'd n.r.e.). Because of the importance of the subject matter, we will review these cases. However, at the outset, our reading of them compels us to hold that the statute of limitations had long since run on this property by the time suit was filed, and that the only issue is whether a business or commercial use existed. This issue as defined in *Briggs v. Hendricks*, 197 S.W.2d 511, 513 (Tex.Civ. App.—Galveston 1946, no writ) is applicable here:

> Courts judicially know that the purpose of restricting lots in additions to cities to residential use, is to establish an area free from commercial activity, and thereby enhance the value of such lots as residential property. The word "residential" as used in a covenant restricting the use of property, is used in contradistinction to "business" or "commercial".

It is clear that the distinction is not, as appellants argue, between different types of business use but only as to obvious business or commercial use in general.

The *Park* case held that the four-year statute of limitations is controlling in suits to enforce restrictive covenants, citing the *Schoenals* and *Arrington* cases. In *Park*, the trial court found that plaintiff's suit to enforce residential-use-only restrictions was barred by the statute of limitations. Plaintiff had purchased the land in 1964 with knowledge of existing residential-use-only deed restrictions. In 1967, the defendant purchased additional land subject to the same restrictions, and began giving piano lessons from 1967 to 1974, this latter date being when the suit was filed. In addition, upon the completion of a swimming pool in 1969, a swimming school began operation in May of 1970. The commercial use of the land was substantial enough to breach the covenant, and to put the plaintiff on notice. In distinguishing *Park*, appellant points out that in order to toll the statute, the violation of the covenant must be distinct and substantial and plaintiffs must be aware of the breach. In a most unconvincing argument, appellants allege that neither of the *Park* requirements were met in our case. Nothing could be further from the truth. There was here a distinct commercial office building with a large sign out front, an advertising sign and a sign affixed to the front of the building, and there was a flagpole where the American flag was raised each day, with decorative shrubs surrounding the building. There was also a circular driveway in front of the building, with shell gravel on both sides for cars to park. The structure was obviously commercial and permanent in nature.

The insurance agent, Carlson, who leased and worked out of the office, distributed 2,000 of the Farmers Insurance Group road atlas with a stamp on the front that said,

"Bob Carlson Agency, 7511 South Gessner," to residences around the property at least four times during his occupancy of the building. He testified that he wrote from fifty to seventy-five insurance policies for subdivision residents. These factors all contributed to the permanent character of the structure. In determining whether the structure in question is temporary, the size, shape, appearance, and other surrounding circumstances must be taken into consideration. Whether it is temporary becomes a question for the trier of fact. *Hussey v. Ray*, 462 S.W.2d 45 (Tex.Civ.App.—Tyler 1970, no writ).

A somewhat different fact situation existed in the case of *Schoenhals*. In late 1959, Schoenhals converted the inside of his garage into a beauty shop and in early 1960 his daughter, Gloria Griggs, ran it as a commercial operation. Later that year, the Close's purchased the house next door to the Schoenhal's lot. The beauty shop was open for business until 1964. From 1964 until July of 1969, Ms. Griggs did some work in the beauty shop on a charitable basis, but the regular commercial activity in the beauty shop had ceased. In July of 1969, Ms. Griggs made arrangements to resume commercial operations of the beauty shop. The Closes' sued when they learned of Ms. Griggs' intentions to resume the commercial operation of the beauty shop.

The central issue was whether a party who had acquired a right through the statute of limitations to operate a commercial enterprise in contravention of a restrictive covenant may lose the right by abandonment. The court held that in 1964 Ms. Griggs had a right to run her beauty shop by virtue of the statute of limitations, but once the commercial activity ceased between 1964 and 1969, that her reopening of the business constituted another separate violation and whatever right she had obtained in 1964 had been abandoned. The court held that the suit was not barred by the four year limitations statute and affirmed the judgment of the trial court.

*Schoenhals* is easily distinguished from the instant case. The outstanding difference is that the land in question here in Sharpstown has *never* been used for residential purposes; rather, it has been used for business purposes continuously since 1969. Appellant contends that there was a "gap" in the business use, and alleges that Appellee-Pickett is attempting to tack prior nonconforming uses to defeat the tolling of the statute. We find that there was no gap in the business use of the land. The mere fact that a week may have lapsed during the transition period between Bob Hill's real estate office and Pickett's car wash office is not sufficient to justify a finding that the statute of limitations began to run anew in November of 1979.

Finally, appellant places a heavy emphasis on the *Arrington* case. The facts of *Arrington* and the case at bar are distinguishable in several ways. First, *Arrington* involved business uses that were occurring simultaneously with residential use of the property. In such instances, the commercial use of land may not be so open and obvious to people passing by. Here, however, the structure was unmistakably a commercial office. It is difficult to envision a more open and obvious use of the land for business purposes. The court in *Arrington* said at 402:

"Obviously, we think, the use of the premises by the defendant Mrs. Cloer in operating her retail paint and wall paper (sic) store cannot be said to be so incidental to her residence as to be consistent with the meaning and spirit of the covenant which restricted the use of the property for residential purposes."

Thus, there are situations where a business can be so incidental to the residence that there is no violation of the covenants. Here we have no residential use at any time. Second, the court in *Arrington* failed to find that the evidence established conclusively that a beauty shop or any related activity was conducted on the premises *continuously* for a period of four years prior to the paint and wallpaper store. Here, however, the evidence conclusively proves that the business use of land was continuous from 1969 to 1979 when defendant purchased the property. Therefore, *Arrington* is not dispositive of any of the

issues in this case; and, also, contrary to what appellant contends, it is not necessary that all of the plaintiffs or people in the subdivision testify that they knew business was being conducted on Lot 1. The use was so obvious, substantial, and longstanding that plaintiffs *should* have known of the use.

Finally, a further indication of this awareness of business use is the testimony by a member of the Sharpstown Civic Association Board of Directors. He testified that sometime in 1975 the Association was informed by the Houston City Attorney's office that they would not be successful in a lawsuit at that time against Robert Hill for the non-residential use of the property; and based on that information, the association decided against filing suit. We now hold that the statute of limitations barred the suits as to both Lots 1 and 2 of the parcel. Appellant's fourth and fifth points of error are thus overruled.

■ In points of error six through nine, appellant contends that the trial court erred by overruling their motion for judgment non obstante veredicto and motion to disregard the jury's answers to Special Issues 4a and 5, 5a, 6, and 7 because there is no evidence that the right to enforce the deed restrictions was waived as to the disputed property. We hold that the trial court did not err in overruling plaintiff's motion for judgment non obstante veredicto because there was some evidence having probative force to support the jury's finding in this regard.

Special Issue No. 4a inquired of the jury whether they found that any of the plaintiffs knew of the non-residential use of the property. The answer was "we do" as to Lot 1, and "we do not" as to Lot 2. The jury answered "January 1, 1970" in Special Issue No. 5 as being the first date that any of the plaintiff's knew of the nonresidential use of the property. When asked in Special Issue No. 5a if they found that a person of reasonable prudence should have known of the non-residential use of the property, the jury answered "we do". They answered "January 1, 1970" in response to Special Issue No. 6 as to the date when a person of reasonable prudence should have known of the non-residential use of the property. Special Issue No. 7 asked whether the jury found that the plaintiffs waived their right to enforce the restrictions against nonresidential use of the property; to which the jury answered "we do." Further, the jury was instructed that the term "waived" means the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such rights, which is the approved legal definition of waiver. *Simon v. Henrichson*, 394 S.W.2d 249 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.).

Appellant objected to the submission of these issues and cited numerous deed restriction cases in support of their position. However, those cases involved waiver of a common scheme of development in a subdivision as a whole. Inspection of those cases will reveal that they have nothing in common with the problem under consideration here, as the appellee-Pickett is not asserting that there has been a waiver of the deed restrictions in the entire subdivision.

In *Simon* the court held in part that deed restrictions can be waived as to a portion of land within a subdivision, and that it is not always necessary for the entire scheme or plan of the subdivision be violated in order to hold that deed restrictions have been waived. We find the following exerpt from the *Simon* case at 256, citing *Lebo v. Johnson*, 349 S.W.2d 744 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.), applicable to the case at bar:

As stated by Chief Justice Murray in the case of *Lebo v. Johnson, supra,* the property of the appellees cut off from the rest of the area can, for all practical purposes, be considered as no longer a part of the restricted area. We likewise agree with his statement that "One of the best places to hold the encroachment of business and commerce upon a restricted residential area is at a highway or street."

Because of the isolated nature of the tract in question here the *Lebo* reasoning is

equally applicable in our situation. We have carefully examined the testimony and evidence in this case and have concluded that there was ample evidence to warrant the submission of special issues 4a, 5, 5a, 6 and 7 to the jury. *See Simon,* 394 S.W.2d at 258, and cases cited therein.

Appellant further relies on the case of *Wilson v. Gordon,* 224 S.W. 703 (Tex.Civ. App.—Galveston 1920, writ dism'd) in support of their argument that they did not waive their right to enforce the deed restrictions. The facts of *Wilson* are simply distinguished from the instant case because in *Wilson,* the building was initially used to sell lots in the subdivision. Later, residents of the neighborhood intermittently used the building for holding elections, church festivals, and kindergartens. For sometime prior to the suit, the building was not used. Appellant repeatedly asserts that the fact that they have allowed minor violations in the past does not impair their right to enforce the restrictions against appellee now. The facts of *Wilson* do not support appellant's contentions. The building herein, as contrasted with the structure in *Wilson,* has been used for business purposes since 1969 *continuously.* We find that such use was open, obvious, and substantial so that a reasonable person should have been aware that such use was occurring.

■ Appellant further asserts that any such waiver defense against the enforcement of the restriction must show awareness of the violation by each plaintiff. We disagree. To require a defendant to show a defense as to knowledge by each resident of a neighborhood in which a violation is occurring would be an impossible burden and one which the law does not require. The evidence here demonstrated, and the jury found, that a person of reasonable prudence should have known of the nonresidential use of defendants' property since January 1, 1970. Appellant's sixth through ninth points of error are overruled.

Where, as in this case, there is probative evidence that plaintiff's lots have been used and maintained as one parcel; and where the land is uniquely shaped and bor-

dered by a heavily trafficked thoroughfare on one side, a side street on another and effectively isolated by drainage ditch and utility easements; and where the evidence demonstrates that its sole use for over ten years has been a non-residential, open and obvious business use, then we hold that the trial court was justified in rendering judgment removing the restrictions from plaintiff's property.

Judgment of the trial court is affirmed.