**William LEBO et al., Appellants,**

v.

**E. S. JOHNSON et al., Appellees.**

No. 13752.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 6, 1961.

Clemens, Knight, Weiss & Spencer, Lagerquist & Shaw, Walter G. Lagerquist, Jr., San Antonio, for appellants.

Floyd McGown, Jr., San Antonio, for appellees

MURRAY, Chief Justice.

This suit was brought by E. S. Johnson and some five others as owners of several lots in the City of Terrell Hills, Bexar County, Texas, fronting on U. S. Highway No. 81, also known as Austin Highway, as a class action, against William Lebo and some seventeen other named persons who

own property in Terrell Hills, in their individual capacity and as representatives of all other property owners in Terrell Hills, to cancel existing property restrictions limiting the property in Terrell Hills to private single family residential use, alleging changed conditions, violations of the restrictions, and waiver and abandonment by defendants of the restrictions. The trial was before the court without a jury and resulted in judgment for plaintiffs, cancelling the restrictions as to their property, and defendants have perfected this appeal.

No findings of fact or conclusions of law were requested or made, therefore implied findings must be indulged in favor of the judgment rendered, when supported by the evidence.

Appellants' first contention is that the judgment of the trial court is not supported by any competent evidence, or is so against the overwhelming weight and preponderance of the credible evidence, as to be manifestly wrong and unjust.

· The property within Terrell Hills Subdivision is subject to restrictions, among others, limiting its use to single family private residences. The subdivision was platted, the restrictions formulated, both were duly recorded, and the lots placed on the market in 1929. All lots were thereafter sold subject to these restrictions and none were sold without them. In 1933, Bexar County purchased a right-of-way for a relocation of the Austin Highway, and the State built U. S. Highway 81 thereon, cutting off a small triangle at the northwest corner of the subdivision, and also taking portions of the most northern tier of lots in the subdivision. This highway is now 120 to 130 feet wide, and is one of the most heavily traveled traffic arteries in the City of San Antonio. It is actually a part of a national highway, running from Laredo through San Antonio, Waco, Fort Worth, and on to the Canadian border. The appel-

lees purchased their respective properties in the following years: E. S. Johnson, 1955; Dan Oppenheimer, 1941; Gloria R. ·Oppenheimer, 1940; Beulah R. Price, 1955; Humphrey R. Price, 1955; C. F. Sims, doing business as Sims Lumber Company, 1949; which was many years after the relocation of the Austin Highway, now known as U. S. Highway 81.

Appellees bought their property with the restrictions shown in their respective deeds, and with full knowledge of the existence of most of the conditions of which they now complain.

Appellants and other persons testified (1) that they purchased, constructed homes, or loaned money upon appellants' property, after investigation and in reliance upon the restrictions; (2) that the destruction of restrictions, and the erection of business structures as requested by appellees, would seriously affect the beneficial use of appellants' property, and (3) that no business structures of any kind had ever been erected in the Terrell Hills Subdivision.

■ There was evidence that the building of business houses on appellees' lots fronting along Austin Highway would not damage or reduce the value of appellants' property, if some modern shopping center was erected on the property. However, in cancelling restrictions the court must assume that the premises will be devoted to the most noxious permissible use. Perkins v. State, Tex.Civ.App., 150 S.W.2d 157; Hill v. State, Tex.Civ.App., 289 S.W.2d 801. It is undisputed that the traffic has increased on Highway 81, and is now very, very heavy. There is hope that the through traffic and the downtown traffic will be diverted when International Highway 35 is completed through San Antonio, but the Austin Highway, as now located, will in all probability always be a heavily traveled highway.

PLAT OF U.S. HWY. 81 IN TERRELL HILLS

PLAINTIFF

DEFENDANT (NAMED)

SOME DEFENDANTS NOT SHOWN

We have prepared and inserted a plat that is not the reproduction of any exhibit in the record, but one that we hope will make the situation along U. S. Highway 81, where it crosses Terrell Hills Subdivision, more readily understood.

The cut-off triangle that borders a distance of 200 feet on North New Braunfels Avenue and 300 feet on Rittiman Road, is shown in the northwest corner of the plat. The Step-down Power Station is shown in the northeast corner. The property owned by the plaintiffs, who are the appellees, is shown by crossmarks, and the property owned by the named defendants is shown by straight marks. Where we could be certain, we have placed the names of the owners on their respective lots. The property of two of the named defendants is too far to the east to be shown on this partial plat. The plat shows the general location of the lots owned by the parties, but is not intended to show the exact measurements of each.

Appellees contend that the restriction should be lifted as to their property because of the present location and heavy traffic of Austin Highway; because the City of San Antonio has erected and operates a step-down power station in Terrell Hills near appellees' property; because commercial signboards have been erected on the outer tier of lots (most of which are appellees' own lots); because there is located on the property of Humphrey R. Price, a plaintiff below and an appellee here, a storage shed and storage yard, wherein building material, trucks and other vehicles, and tools are stored; because Terrell Hills, which is now an incorporated city, in 1944 passed a zoning ordinance permitting business uses along Highway 81; because a dog kennel has been and is still being operated across Highway 81, upon the triangle cut from the remainder of Terrell Hills by the highway; and because their property has little value for residential purposes, but great value for commercial use.

It will be borne in mind that this is not a suit by one or more owners of lots in a restricted subdivision to enjoin other lot owners from violating restrictions, but, on the contrary, is a suit by certain lot owners to cancel and permanently destroy such restrictions as to their lots, based upon changed conditions within and without the restricted areas. There are many decisions relating to both of these kinds of suits. These two lines of decisions are similar in some respects and quite dissimilar in others. Confusion will be avoided if we keep in mind the distinction between these two kinds of cases, and do not try to indiscriminately apply the rules laid down in one such line of cases to the other. Bickell v. Moraio, 117 Conn. 176, 167 A. 722; Fidelity Title & Trust Co. v. Lomas & Nettleton Co., 125 Conn. 373, 5 A.2d 700; Booker v. Old Dominion Land Co., 188 Va. 143, 49 S.E. 2d 34; 4 A.L.R.2d 1113.

In *Hill v. Ogrodnik,* 83 R.I. 138, 113 A. 2d 734, at page 737, Justice Capotosto, speaking for the Supreme Court of Rhode Island, said:

"Generally speaking, the purchaser of a lot in a uniformly restricted real estate development, who is himself without fault, is entitled to rely upon the protection of a restrictive covenant so long as it remains reasonably possible to carry out its original purpose. In this connection it is important to keep in mind that there is a marked difference between the effect on the covenant of a *bill for an injunction* and of *one to remove a cloud on title.* In the first class of cases, notwithstanding the granting of an injunction, the covenant remains in force for all other purposes, whereas in the second class its removal as a cloud on title nullifies it for all time. Considering the extreme effect on the covenant in cases of the latter type, the prayer of such a bill should be viewed with caution and granted only when the essential allegations are established by clear and convincing evidence." (Emphasis added.)

■ The rights which each property owner in a restricted residential area has,

to have all other property owners therein to not violate such restrictions have been called "negative easements" which are enforceable by any grantee against any other grantee, each lot being both a dominant and servient tenement. No pecuniary injury need be shown to entitle a dominant owner to equitable relief. 50 Harvard Law Review, p. 215; Continental Oil Co. v. Fennemore, 38 Ariz. 277, 299 P. 132; Hartman v. Wells, 257 Ill. 167, 100 N.E. 500; Austin v. Van Horn, 245 Mich. 344, 222 N.W. 721; Evangelical Lutheran Church of the Ascension of Snyder v. Sahlem, 254 N.Y. 161, 172 N.E. 455. It is stated in 50 Harvard Law Review, at page 216: "Perhaps the most noteworthy development of the last fifty years in the field of equitable servitudes is the doctrine that such servitudes become unenforceable when, because of changes in the neighborhood, their purposes can no longer be realized."

Originally, the Courts while enforcing restrictions by injunction in a proper case refused to remove restrictions as a cloud on title, because such restrictions were contractual in nature, and contractual obligations do not disappear as circumstances change, and should not be removed, as they might have some value in law, though not enforceable in a court of equity by injunction.

With the adoption of the declaratory judgment statutes in the various states this rule was relaxed, and now courts entertain such suits where, due to the radical changes in conditions within and without the restricted areas, the original plan or scheme of development can no longer be accomplished and it would be harsh or unjust to enforce such restrictions within the area. The rule has been clearly stated in a number of decisions.

In 4 A.L.R.2d p. 1118, we find the following:

"Most jurisdictions now recognize a change in the character of a neighborhood as a ground for affirmative relief against restrictive covenants by way of cancellation or modification where the change has been so radical as to render perpetuation of the restriction of no substantial benefit to the dominant estate, and to defeat the subject or purpose of the restriction."

See also, Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275; Bethea v. Lockhart, Tex. Civ.App., 127 S.W.2d 1029; Overton v. Ragland, Tex.Civ.App., 54 S.W.2d 240; Abernathy v. Adoue, Tex.Civ.App., 49 S.W.2d 476; Ragland v. Overton, Tex.Civ. App., 44 S.W.2d 768; Osius v. Barton, 109 Fla. 556, 147 So. 862, 88 A.L.R. 394; Alexander v. Title Ins. & T. Co., 48 Cal.App.2d 488, 119 P.2d 992; McArthur v. Hood Rubber Co., 221 Mass. 372, 109 N.E. 162.

Whether affirmative relief from restrictive covenants should be granted, because of a radical change in the character of the restricted area, depends upon a number of factors, including the size of the restricted area, its location with respect to where the change has occurred, the type of change that has taken place, the character and conduct of the parties or their predecessors in title, the purpose for which the restrictions were imposed, and, to some extent, the unexpired term of the restrictions. The Courts give greater weight to the changes occurring within than those occurring without the restricted area.

The rule is plain, and a difficulty arises only when it becomes necessary to apply it to the particular facts of a case. The facts are always different, and no two cases are exactly alike. Each case must be decided largely upon its own facts. No hard and fast rule can be laid down as to just when, due to violations of restrictions and other changed conditions, it is no longer possible to accomplish an original plan or scheme of development.

We have concluded that the undisputed facts in this case as to changed conditions, both within and without Terrell Hills, do not justify the cancelling and destruction of the restriction as to "use for residen-

tial purposes only," now existing within such subdivision.

When appellees purchased their lots Highway 81 had already been constructed in its present location, and appellees knew, or should have known, that they were purchasing lots bordering on Highway 81. They accepted their deeds containing a reference to the stipulation that such lots were subject to the restriction that they could not be used for any other purpose than the erection of a private residence thereon. So far as this record shows, the dog kennel was being operated on the cut-off triangle in the northwest corner of the subdivision at the time appellees purchased their lots. Most of the out-door advertising signs have been placed on appellees' own lots with their consent or acquiescence, in violation of the restriction of residential use only. The signs are built upon pilings and can easily be dismantled and hauled away without injury to the freehold. The storage shed and storage yard was erected and established by one of the appellees upon his own lot, and is not shown to be of a permanent nature. The step-down power station was established by the City of San Antonio, and it could not have been prevented, as such City has the right of eminent domain. Farmer v. Thompson, Tex.Civ.App., 289 S.W.2d 351; City of River Oaks v. Moore, Tex.Civ.App., 272 S.W.2d 389; City of Houston v. Wynne, Tex.Civ.App., 279 S.W. 916. The City property is fenced with a link chain fence and the power station is surrounded by a neatly kept lawn. It does not disturb even residents on adjoining lots, and only makes a humming noise about like an electric fan. The station is located on lots which front on Highway 81. Due to the modern use of electricity, it is such a change that might be expected to happen to any large residential area. It is plain that all of the violations of the building restrictions are on lots that front on Highway 81, and are not of a permanent nature, except the electric station and the highway.

The Terrell Hills Subdivision is composed of 350 lots, and they are now owned by more than 350 different persons, corporations or trusts. The subdivision is improved throughout. The homes range in value from $22,000 to $75,000. They are all well landscaped and neatly kept. The Terrell Hills Subdivision is at the present time a high-class residential area, comparable to any in or near San Antonio.

It is quite apparent that the building restriction of residential use only is valuable to all of the 350 lots in the subdivision, except the lots that front upon Highway 81. They are of little value for residential purposes, but would be of great value if the building restrictions were set aside and voided.

Appellees are in no position to complain of the changes that had already taken place in that area when they purchased their lots, or the violations of the restrictions which they have brought about on their own lots, and which are of a temporary nature. Murphy v. Davis, Tex.Civ. App., 305 S.W.2d 218; Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275; Gordon v. Hoencke, Tex.Civ.App., 253 S.W. 629; Allen v. Avandate Co., 135 Fla. 6, 185 So. 137; Pancho Realty Co. v. Hoboken Land & Imp. Co., 132 N.J.Eq. 15, 25 A.2d 862.

There is no evidence that the original plan or scheme to make Terrell Hills Subdivision a nice quiet residential area has ceased to be possible of accomplishment, and that such restrictions have come to an end because the character of Terrell Hills Subdivision has so radically changed that it can no longer be maintained as a high-class residential district. The restriction herein involved is perpetual, unless ended by a two-thirds vote of the lot owners in Terrell Hills. No such vote has ever been taken.

On the other hand, the record affirmatively shows that the building restrictions are of great value, and are working well, except as to the tier of lots bordering upon Highway 81, and the lot owned by Robert

Winn, who is willing to have his lot converted into business property.

In every growing city it is inevitable that sooner or later commercial and business areas must come face to face with residential areas, and it is then that the restrictions are most valuable to the interior lot owners. It is when the outer tier of lots become more valuable for commercial and business purposes that the restrictions come into play and prevent the residential area from being taken over by commercial establishments. As was said in Bernstein v. Minney, 96 Cal.App. 597, 274 P. 614, 616:

"It is common knowledge that business property has a value peculiar to itself, that residential property has a value peculiar to itself, and that a combination of the two has a depreciating effect on the values of either of the other kinds."

The front tier of lots must bear the brunt of the onslaughts of business and commerce, otherwise there would be started a system of gradual encroachment that might swallow up the entire residential area. The other tiers of lots might fall like ten pins, once the encroachment of commerce and business was begun. One of the best places to hold the encroachment of business and commerce upon a restricted residential area is at a highway or street. Once the building of business houses is allowed to cross Highway 81, and such building begins within the Terrell Hills Subdivision, the halting of it may prove very difficult, and it could continue until this vast residential area was completely destroyed.

What was said in Faubian v. Busch, Tex. Civ.App., 240 S.W.2d 361, 367, is directly in point here:

"Appellees contend that the termination of the restrictions would only affect their four lots. Such contentions have been previously made in similar cases but the courts have concluded that such a contention is not logically sound for the reason that lots adjacent to those upon which restrictions had been violated would suffer first and be affected most. Under such circumstances, the adjacent owner could with propriety likewise violate the restrictions, then the one next to him would in equity have an equal right; and so on throughout the whole Addition. By such process of reasoning the entire purpose and intention originally expressed to create a restricted residential district could be thwarted and all property owners who did not desire to accept the changed situation and convert their homes into business property would be penalized without fault on their part. It is our opinion that equity in such a situation is with the property owners who desire that their home district be confined to its original purpose, and that equity is not with one or two or a few who seek to violate those conditions because they happen to own the particular piece of property which was most affected by changed conditions. In considering such matters it has been held that the best interest of the property owners generally within the restricted area should be considered and not the best interest of only one or two or even a few property owners. It has also been held in such cases that changed conditions outside of the restricted area must not be permitted to terminate the restrictions within the restricted area when such would cause property owners within the restricted areas to suffer damages. Bethea v. Lockhart, Tex.Civ.App., 127 S.W.2d 1029, and Scaling v. Sutton, Tex.Civ.App., 167 S.W.2d 275.

Appellees contend that the restrictions are confusing. There is no confusion as to the restriction that the lots can be used only for the purpose of erecting thereon private residences.

The fact that the City of Terrell Hills has zoned appellees' property for busi-

ness and commercial purposes does not abrogate the original building plan or scheme, nor does it terminate the building restrictions. Faubian v. Busch, supra; Morton v. Sayles, Tex.Civ.App., 304 S.W.2d 759; Farmer v. Thompson, Tex.Civ.App., 289 S.W.2d 351; Eakens v. Garrison, Tex.Civ. App., 278 S.W.2d 510; Spencer v. Maverick, Tex.Civ.App., 146 S.W.2d 819; 26 C.J.S. Deeds § 171.

The situation may be summed up as follows:

Appellees cannot claim as changed conditions those that had already taken place at the time they purchased their lots and received their deeds containing a reference to the restriction of residential use only. Highway 81 was, to all practical purposes, the north boundary of the restricted area, and their lots located thereon. The small triangle, cut from the rest of the area by Highway 81, can for all practical purposes be considered as no longer a part of the restricted area, and, if not, the dog kennel was located thereon at the time appellees purchased their lots. The record does not show how much traffic has increased on Highway 81 since they purchased their lots, as it is not shown how much traffic there was when they purchased, but undoubtedly it has increased considerably since that time. Highway 81 may be relieved of through traffic and downtown traffic when International Highway 35 is completed. The signboards, with one exception, and the storage shed and yard have been constructed by one of the appellees in violation of the restriction. Such structures are temporary in nature. Appellees can gain no advantage by their own wrongs. This leaves, in effect, the step-down electric substation the only violation within the restricted area since they purchased their lots, and that could not have been prevented by anyone. Wald v. West MacGregor Protective Ass'n, Tex.Civ.App., 332 S.W.2d 338.

The only Texas case relied upon by appellees of the same nature as the one here, that is, a suit to cancel restrictions as distinguished from a suit by one lot owner to enjoin another lot owner from violating a restriction, is that of Ragland v. Overton, Tex.Civ.App., 44 S.W.2d 768, and the same case on a second appeal, Overton v. Ragland, Tex.Civ.App., 54 S.W. 2d 240.

The following statement is found in the opinion on the second appeal, 54 S.W.2d at pages 242, 243:

"Block 99, upon the southwest corner of which the two lots in question are situated, has thirteen business establishments fronting north on Main street, which runs east and west and parallel with Broadway. Changed conditions in a neighborhood brought about by agencies outside of the parties themselves will terminate a building restriction limiting or restricting property in use for residential purposes only. * * *

"This action is filed only against Overton, the original grantor. No vendee of any other lot in the restricted district has intervened or been made a party to the action, and, since the restriction and reversionary clause in the event of a breach seems to indicate that it is personal to Overton, it is questionable whether other grantees could intervene. We do not, however, decide that point. * * *

"The record shows without contradiction that Overton had conveyed 33 of the lots within the restricted district which did not contain the restrictive clause found in the appellees' deed. This is some proof of the absence of a uniform scheme or plan of restriction, and such fact is sufficient to support the finding of the jury that the restriction had been waived."

In the above case the suit was against the original developer only, and none of the lot owners in the subdivision were made parties to the suit. The restriction which

was contained only in some of the deeds was personal to Overton, the original developer, in that it provided for a forfeiture to him in case of a violation. He had conveyed 33 lots fronting on Broadway without any restrictions whatever. These facts readily distinguish that case from this case.

■ All of the other Texas cases relied upon by appellees are suits for injunction to enjoin violation of restrictions, and are therefore of little help here, with the exception of the case of Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943. That was a suit by certain lot owners seeking a declaratory judgment establishing the validity of the restrictions, and seeking an injunction against their violation by other lot owners. Thus the burden of proof was on the plaintiff to establish the validity of the restrictions, while here the burden of proof was upon plaintiffs below to establish the invalidity of the building restrictions. This they have failed to do.

■ The evidence here completely fails to show that the owners of the interior lots in Terrell Hills Subdivision have abandoned, or that they are in any way estopped from insisting upon, the enforcement of the building restriction of "residential use only," now in force in the subdivision, and the evidence affirmatively shows that there are no such radical permanent changes, within or without the subdivision, which would render the original plan of developing a restricted residential area incapable of accomplishment. The burden of proof was upon appellees to show this, and they have not done so.

The evidence shows that the original purpose can still be realized for the benefit and protection of the owners of the interior lots, and therefore the trial court erred in rendering judgment striking down and holding for naught the restrictions solemnly agreed to by all parties.

The judgment will be reversed and judgment here rendered that appellees take nothing.