Joe SIMON et al., Appellants,

v.

George W. HENRICHSON, Dave Sughrue and wife, Clytee Sughrue, Appellees.

No. 114.

Court of Civil Appeals of Texas.

Corpus Christi.

Sept. 23, 1965.

Rehearing Denied Oct. 14, 1965.

Robert L. Bunting, Jr., Corpus Christi, for appellants.

Alfred Nicholas, of Horkin, Nicolas & Nicolas, Corpus Christi, for appellees.

NYE, Justice.

Appellees, as plaintiffs in the trial court, brought suit seeking a declaratory judgment removing residential deed restrictions from their property in Corpus Christi, Texas. There were twenty-five named defendants as owners of lots in the subdivision, who were sued in their individual capacity and as representatives of all classes of other property owners within the subdivision. The trial was before a jury which answered special issues favorable to plaintiffs. Judgment was rendered cancelling the restriction. The appellants (defendants) have perfected this appeal.

Primarily, the question for us to determine is whether or not the issues submitted to the jury and the evidence upon which the issues were answered are sufficient to permit affirmative relief as sought by the plaintiffs in the trial court.

 The plaintiffs have more of an onerous burden in obtaining affirmative relief to remove the restrictive covenants against their property and to establish the invalidity of such restrictions, than a property owner has in defending a suit brought by one or more owners of lots in a restricted subdivision to enjoin him from violating such restrictions. In the latter class of cases, regardless of the ruling on the injunction, the restriction is not removed, even if the violation as it exists, continues; whereas, as in this case, the removal of the restriction as a cloud on the title, nullifies it for all time. The courts, consequently demand much stronger proof for obtaining affirmative relief than for prescribing injunctive relief.

The jury found in response to special issues submitted that: Lots 1 and 2 in Block 2 have been rendered reasonably unsuitable for exclusively residential purposes because of changes in the addition in the area of the lots and the area surrounding the addition; that a majority of the residential owners in the addition have waived the right they may have had to prevent the use of Lots 1 and 2 for business purposes; that the removal of restrictions on Lots 1 and 2 would not prove harmful to resident owners; and that changes in the addition in the area of Lots 1 and 2 and the area surrounding said addition have not materially damaged the scheme of development of the balance of the addition for residential purposes. Judgment was rendered removing the residential restriction only from plaintiffs' Lots 1 and 2, Block 2, Edgewater Terrace Addition.

Originally, in 1938, the subdivision was platted to permit a business community along the water side of Ocean Drive, to include commercial property for a business community center on six lots at the extreme south end of the addition. Deed restrictions were filed contemporaneously with the original plat to limit business to these six lots and restricting all of the balance of the lots in the subdivision to residential use. The following year the subdivision was replatted deleting three lots on the water side of Ocean Drive, leaving only three lots designated as business area. No change or amendment to the deed restrictions was made reducing the business lots from six to three. The second plat made radical changes in the addition, including the bringing along of Alameda Street to intersect at this point with Ocean Drive. This is a very busy thoroughfare, running parallel to Ocean Drive for many miles except at this point where it intersects with Ocean Drive. Plaintiffs' lots are at this intersection and across the street on Ocean Drive from the business community. They are in effect a portion of an island, segregated from the rest of the subdivision. On the north from plaintiffs' property is Ocean Drive and the commercial business center. On the east is Oso Bay and the salt flats. On the west is Alameda Drive and the bulk of the residential subdivision. To the south, including the balance of Block 2, are residential restricted lots, vacant and never developed in the twenty-seven years that this subdivision has been in existence. There are some 250 lots within the subdivision, almost all of which have been developed, save and except, the residential lots in Block 2, which join plaintiffs' property and front on Alameda and Ennis Joslin Road and which back up to the Oso Bay salt flats. We have prepared and inserted a plat that is not the reproduction of any particular exhibit in the record, nor has such plat been drawn to scale. However, we believe that the particular facts concerning the situation around plaintiffs' property can be more readily understood by reference to the plat.

One of the original owners who platted the subdivision stated that plaintiffs' lots were originally intended to be included in the business community. However, he testified that the three lots deleted from the original platting of the subdivision were turned back to the original land owners and that the plaintiffs' property was never a part of the six original lots included in the community center. The evidence is clear and uncontroverted that plaintiffs' property was originally sold in 1941 for business purposes. Plaintiffs' lot were developed, and business establishments placed thereon with the expressed consent and approval of the original owners and subdividers. The plaintiffs testified that they purchased the property and an already going business in 1945, without actual knowledge of the existence of the deed restrictions. They continued the operation of businesses on the lots from that time until the present. The property, since its purchase, has been annexed to the City of Corpus Christi, zoned for neighborhood business and taxed as business property. There was no evidence that any of the property owners within the addition objected to the business zoning at the time it was zoned.

All of the appellants admitted that they never objected to the business use of the property. There was no evidence that anyone ever objected during the twenty-five years that the property in question had been used for business purposes. Many of the witnesses admitted using and patronizing the plaintiffs' businesses. No objections to the removal of the restrictions were voiced by the mortgage companies.

Appellants' first three points (1) that they are entitled to a judgment as a matter of law because plaintiffs did not allege or prove that the benefits of the original plan for a restricted subdivision could not be realized for the protection of the interior lots, notwithstanding that plaintiffs might be deprived of their valuable use of their property and (2) that the only violations of restrictions in the subdivision were brought about by plaintiffs and their predecessors

in title and they may not take advantage of their own wrongdoing, and (3) plaintiffs may not complain of changes that took place before they purchased the property for they knew (constructively) when they purchased the property that the buildings located thereon were in violation of the restrictive covenants limiting them to residential purposes.

■ This is not a suit to enjoin the violation of restrictions, but it is a suit by lot owners to cancel the deed restrictions as to their lots based upon changed conditions within and without the restricted areas. With the adoption of the declaratory judgment statutes, the courts entertain suits to remove restrictions as a cloud on title.

■ One of the most noteworthy development in the last half century in the field of equitable servitudes is the doctrine that such servitudes become unenforceable, when, because of changes in the neighborhood, their purposes can no longer be realized. See 50 Harvard L. Review, page 216. In American Law Reports, it is said that:

"Most jurisdictions now recognize a change in the character of the neighborhood as a ground for affirmative relief against restrictive covenants by way of cancelation or modification where the change has been so radical as to render perpetuation of the restriction of no substantial benefit to the dominant estate, and to defeat the object or purpose of the restriction." See 4 A.L.R.2d 1118, and cases cited therein.

■ The factors which would permit relief from the restrictive covenants depend upon a number of things (1) including the size of the restrictive area, (2) its location with respect to whether the change has occurred, (3) the type of change that has taken place, (4) the character and conduct of the parties or their predecessors in title, (5) the purpose for which the restrictions were imposed, (6) to some extent the unexpired term of the restrictions. (NOTE)

The courts give greater weight to changes occurring within the subdivision than those occurring without the restricted area. Lebo v. Johnson, 349 S.W.2d 744 (Tex.Civ.App. 1961, ref. n. r. e.).

■ The rule is plain and the difficulty arises only when it is necessary to apply the rule to the particular facts of a case. The facts are always different and no two cases are exactly alike. Each case must be decided largely upon its own facts. No hard and fast rule can be laid down as to just when the facts justify the granting of affirmative relief removing the restrictions. Lebo v. Johnson, supra.

■ A good point to begin with, to see if this case comes within the factors announced above is to first consider the concession made by the appellants. They concede in their brief that they are not entitled to injunctive relief against the plaintiffs; that the plaintiffs' businesses have worked well for twenty years; that they have no complaint of the present business on this property and that they admit that the businesses had been there too long for them to obtain injunctive relief. There are some rules that may be applied to both the injunctive cases and those which seek affirmative relief. In the case of Cowling v. Colligan, 158 Tex. 458, 312 S.W.2d 943 (1958), the Supreme Court laid down certain rules of law by which a court of equity must be guided in determining whether to enforce a residential only restriction:

"It may refuse to enforce it because of the acquiescence of the lot owners in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it. (Citing cases.)

"It may also refuse to enforce it because there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the covenant." (Citing authorities.)

Appellants' concessions admit to a portion of the rules hereby laid down.

■ Let us now consider the evidence as to the change of conditions within and without the subdivision. The jury in answer to Special Issues 2 and 3 found that Lots 1 and 2 had been rendered unsuitable for residential purposes because of changes in the subdivision, in the area of the lots in question, and in the area surrounding the addition. The lots in question were developed and improved as business property representing a large investment to the plaintiffs with the full consent and acquiescence of the original owners and all subsequent owners. Plaintiffs testified that extensive business improvements were placed on the property after they purchased the land, including remodeling of the buildings and improving the land. The property was worth considerably more as business property than as residential. The City rezoned the property for business purposes. The property has a very extensive traffic pattern on three streets surrounding it on two sides: (1) Ocean Drive carrying traffic to and from the U. S. Naval Air Station and the University of Corpus Christi and to and from Downtown and Midtown Corpus Christi; and the other (2) a main arterial road to and from Flour Bluff and Padre Island (Ennis Joslin Road) and an alternate route to Midtown and Downtown Corpus Christi (Alameda). Although the subdivision is almost completely developed, not a single residence was built in Block 2 where appellees' property is located. These lots in Block 2 front Alameda and Ennis Joslin Road and back up to the Oso Bay and salt flats. (See attached plat). The testimony showed that blowing sand from the salt flats and unwelcome odors from a nearby sewage disposal plant render the appellees' property unsuitable for residential purposes. A fishing pier located across the street from

appellees' property and on the edge of Oso Bay contributes to its undesirability for residential purposes. We recognize that the change of zoning and the relative disproportion of value are not sufficient by themselves to constitute such a change as would warrant the removal of the valid restrictions. Stewart v. Valenta, 361 S.W. 2d 910 (Tex.Civ.App.1962, ref. n. r. e.). However, considered along with the other changes that have taken place, within and without the subdivision, we hold that there is suficient evidence of radical changes that will permit the removal of the restriction from appellees' property. We do not give weight to appellees' testimony that they had no actual knowledge of the deed restrictions at the time they purchased the property because constructive notice was sufficient. However, it is clear to us that the original owners likewise overlooked such constructive notice when they sold the property originally for business purposes (25 years ago) and no objection was made by any owner to the uses placed on the property by the plaintiffs and their predecessors in title. The deed restrictions also provided for the property to revert to the owner where a violation of the restrictions occurred. No reversionary rights have ever been claimed. One or more witnesses (property owners within the subdivision) testified that they did not know that the appellees' property was even within the subdivision. As stated by Chief Justice Murray in the case of Lebo v. Johnson, supra, the property of the appellees cut off from the rest of the area can, for all practical purposes, be considered as no longer a part of the restricted area. We likewise agree with his statement that "One of the best places to hold the encroachment of business and commerce upon a restricted residential area is at a highway or street." This, we believe, has taken place here. There are other factors that distinguish this case from the Lebo v. Johnson case. In the Lebo case, the Court said that:

"Appellants and other persons testified (1) that they purchased, constructed homes, or loaned money upon appellants' property, after investigation and in reliance upon the restrictions";

(here, some property owners did not even know that plaintiffs' property was within the subdivision; the mortgage companies had no objection; and all of appellants purchased their property after the business was established on plaintiffs' propery);

"(2) that the destruction of restrictions, and the erection of business structures as requested by appellees, would seriously affect the beneficial use of appellants' property";

(here, there was testimony that the business use would enhance the property surrounding the plaintiffs' property and the jury found that the removal would not be harmful);

"and (3) that no business structures of any kind had ever been erected in the Terrell Hills Subdivision.";

(here, plaintiffs' business had been erected, operated, and patronized by subdivision owners for over twenty-five years). Plaintiffs do not rely exclusively upon changes that took place prior to their purchase of the property as the changes were continuous throughout the years. Under the facts before us, appellants' points are without merit and therefore overruled.

■ Appellants' fourth point complains that the trial court erred in not rendering judgment for the appellants based on the answer to Special Issue No. 1 that the owners did not intend *at the time* of the adoption of the restrictions that Lots 1 and 2 in Block 2 be reserved for business purposes and uses. We overrule this point as it is understandable that the jury would find that in 1938 when the deed restrictions were filed, that Lots 1 and 2 were not to be designated as a commercial center. The deed restrictions were filed (in 1938) *at the time* of the filing of the orig-

inal plat when six lots were to be included for business purposes. The issue has no ultimate effect on this case, because the plat of the subdivision was subsequently modified deleting three lots and filed in 1939, without amending the restrictions. The appellants and plaintiffs purchased their property after 1939.

 Appellants' fifth and sixth points complain of the submission of the issue of waiver to the jury and of the court's definition of "waiver". The jury found that a majority of the resident owners of Edgewater Terrace Addition waived the right they may have had to prevent the use of Lots 1 and 2 of Block 2 for business purposes. The court defined the term "waiver" as meaning the "intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right." Appellees do not rely on waiver and abandonment of the entire scheme of development, nor do they ask for the removal of the deed restrictions on the entire subdivision. Their position is: that only the residential restriction has been waived and abandoned as to Lots 1 and 2, Block 2, and that this is permissible under the law * * * parties may abandon a scheme of restrictions as to part of their property, and maintain it as to other portions. 26 C.J.S. Deeds § 169, page 1166. Appellants argue that there can be no waiver until the entire scheme or plan of the subdivision has been violated to such an extent that it is in fact abandoned. Such conclusion is partially correct. Where a landowner who has never used his property for business seeks to have the restriction removed, relying on the violations elsewhere in the addition, then the rule must show such extensive violations as to amount to abandonment of the whole scheme of development. See 26 C.J.S. § 169. We hold that the court's definition is substantially correct and presents no harm. Appellants' contention that the deed restrictions do not permit a waiver is without merit. There is ample

evidence, that the appellants have abandoned the residential restriction as it applies to these plaintiffs' property. Appellants' fifth and sixth points are overruled.

Appellants' seventh point is multifarious and does not comply with the briefing rules. It relates to the sufficiency of evidence to the jury's answer to Special Issues 2 and 3 concerning the unsuitability for exclusively residential uses of the plaintiffs' property because of changes in this addition in the area of the lots in question and in the area surrounding the addition occurring since July 7, 1938, and the lack of pleading to support the issue. We have set out much of the evidence and have read the entire statement of facts and the transcript, and find that the evidence and pleadings are sufficient. Golden State Mutual Life Insurance Co. v. White, Tex. Civ.App.1964, 374 S.W.2d 901, ref. n. r. e. Appellants' seventh point is overruled.

 Appellants' eighth and ninth points complain that there is no evidence to support the findings in Special Issues 6 and 7. The jury answered Special Issues 6 and 7 to the effect that the removal of the restrictions on Lots 1 and 2 in Block 2 would not prove harmful to the resident owners. Appellants admit that these issues were submitted by them. However, they argue that they are not bound by the issues submitted under Rule 279, Texas Rules of Civil Procedure, where there was insufficient evidence to warrant the submission of such issue. Objection of no evidence can be made for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party or not. Rule 279, T.R.C.P. Complaint after verdict as made herein, that the evidence was insufficient to warrant the submission of the issue is, of course, just another way of saying that there was no evidence to raise the issue. It is apparent that the word "insufficient" in Rule 279, T.R.C.P., is not used in the factual sense of insufficiency to support a finding which the jury has made. Myers

v. Crenshaw, 134 Tex. 500, 137 S.W.2d 7, Opinion adopted by Supreme Court (1940).

The record shows that witness Henrichson testified that residents property would increase in value if a business establishment is properly put in, according to code and zoning laws. He stated that it would increase the value of the residential property. He further testified that the residents that were faced up to the business and the residents of Edgewater Terrace across the street from the business would be enhanced. Witness Quaile stated that business property would be a benefit to the resident property owners. He was asked this question:

"In view of that knowledge and your experience in that business (a real estate man and resident of the City of Corpus Christi for forty years) would you tell us what would be the best use for these lots here on the corner (Lots 1 and 2) * * *."

Answer: "I would says Lots 1 and 2 (the property in question) *originally intended for business, should be business. Be convenient for the neighborhood.*" (Emphasis supplied.)

Other witnesses testified that they had no objection to the present business; that the business was convenient to their use; that they traded and patronized the business of the plaintiffs.

█ In Myers v. Minnick, Tex.Civ. App., 187 S.W.2d 941, Justice Norvell, now of our Supreme Court, said:

"Under this provision of the rule, appellant, despite his failure to object to the submission of Special Issue No. 1, may here present his contention that the jury's answer to Special Issue No. 1 is without support in the evidence. This contention was efficiently raised in appellant's motion for new trial * * *."

We have carefully examined the testimony and have concluded that there was ample evidence to warrant the submission of the issues. Meek v. Bower, 333 S.W.2d 175, Tex.Civ.App.1960; Holt v. Purviance, 347 S.W.2d 321, Tex.Civ.App.1961, ref. n. r. e.; Dial Temp Air Conditioning Company v. Faulhaber, 340 S.W.2d 82, Tex.Civ.App. 1960, ref. n. r. e.; 4 McDonald Texas Civil Practice § 18.14, page 1456; Golden State Mutual Life Insurance Co. v. White, supra.

The jury found that changes in the Edgewater Terrace Addition since 1938 in the area of lots numbered 1 and 2 of Block No. 2 and the areas surrounding said addition had not materially damaged the scheme of development of the balance of Edgewater Terrace Addition for residential purposes. No objection was made to this issue whatsoever on appeal and no point of error is assigned to this issue.

█ Where, as in this case, plaintiffs' lots had been rendered reasonably unsuitable for residential purposes; and where the evidence is such that all of the property owners individually and as members of a class have abandoned their right to prevent the appellees' lots from being used for business purposes; and where the evidence is sufficient to uphold the jury finding that the removal of the restriction would not prove harmful to the residential owners; and where the changes in and around appellees' lots have not materially damaged the scheme of development of the balance of the addition for residential purposes; and where the appellants have admitted that they have no right to injunctive relief, and from all of the other particular factors present in this case, we hold that the trial court was justified in rendering judgment removing the restrictions from plaintiffs' property.

Judgment of the trial court is affirmed.