**INDEPENDENT AMERICAN REAL ESTATE, INC., Appellant,**

v.

**Don O. DAVIS and wife, Thurma Davis, and other owners of property located in Plymouth Park North No. 6, an addition to the City of Irving, Dallas County, Texas, Appellees.**

No. 05–86–00820–CV.

Court of Appeals of Texas,
Dallas.

May 22, 1987.

Robert P. Latham, Dallas, for appellant.

Luke Madole, Dallas, for appellees.

Before DEVANY, STEWART and ROWE, JJ.

DEVANY, Justice.

This is an appeal from a summary judgment granted in favor of Don O. Davis and other homeowners in Plymouth Park, a residential subdivision in Irving, Texas, against Independent American Real Estate, Inc., (IARE), the owner of Lot 16, a border lot in their subdivision. Lot 16, a nine-acre lot, was part of the original thirty-eight acre plat of Plymouth Park. The judgment held that the deed restrictions on Lot 16, limiting its development to single-family homes, were valid and enforceable. IARE appeals, contending that the trial court erred in granting the homeowners' motion for summary judgment because IARE presented evidence clearly demonstrating that there were genuine issues of material fact which precluded the granting of summary judgment; IARE further contends that the trial court erred in denying IARE's motion to modify the temporary injunction after the temporary injunction was superseded by the final judgment. Because we find no merit in these arguments, we affirm the judgment of the trial court.

This lawsuit began when Dawn Development Company and J. Clark, the original plaintiffs and owners of Lot 16, sued the homeowners to have the deed restrictions on Lot 16 declared invalid and unenforceable as to that lot. The homeowners counterclaimed, seeking a declaration that the restrictions were valid and enforceable. While the suit was pending, IARE bought Lot 16 from Clark and Dawn, and thus became its beneficial owner. IARE intervened in the suit and responded to the homeowners' motion for summary judgment.

The property in question, Lot 16, is a nine-acre border lot on the southeast corner of Plymouth Park, a thirty-eight acre tract. The rest of Plymouth Park is divided into 126 quarter-acre lots, 124 of which have single-family homes on them. To the north, Lot 16 is bordered by five vacant acres. To the south, Lot 16 is bordered by three homes and by Finley Road, a residential street leading into the rest of Plymouth Park. To the east, Lot 16 is bordered by Belt Line Road, a major four-lane arterial street, which is heavily traveled. To the west, Lot 16 is bordered by homes in the Plymouth Park subdivision.

The original plaintiffs, Dawn and Clark, agreed to a temporary injunction, wherein the trial court enjoined them from grading Lot 16, from doing any construction work not done for the purpose of constructing single-family homes, and from constructing any paved or other parking spaces on the lot.

The homeowners then moved for summary judgment. In their motion, the homeowners presented evidence in the form of the affidavit of Thurma Davis, the wife of Don Davis. Mrs. Davis testified that she lived in Plymouth Park with her husband, and had done so since 1966. She testified that she and her husband were among the first people to purchase a home in Plymouth Park, and she gave the legal description of her property. She testified that she was familiar with the plat of Plymouth Park and that she had seen the land which it depicted for many years. She testified that 124 of the 126 lots in Plymouth Park had been developed as single-family homes. The remaining two lots, a church-owned lot and Lot 16, were vacant land. Mrs. Davis further testified that she and her husband had bought their home on the assumption that the surrounding area would be residential, and that the conveyance of their home was given and accepted subject to the deed restrictions in question. She testified that in 1972, Belt Line Road had expanded to a four-lane road from a two-lane road. She also testified that Plymouth Park presently exists as a residential subdivision, and that the covenants have served and continue to serve their purpose of creating a residential neighborhood. She stated that several of the families on her block were still the original owners, and several more were second owners. In conclusion, she testified:

Our families have grown up together, and our children have gone to school

together, and we plan and hope to live here as we always have. The fact that all the lots depicted on the Plat, except the two I have mentioned before, were developed and still exist as single family detached residential dwellings shows that it is still possible to secure the benefits sought to be realized through the covenants for single family detached dwellings in Plymouth Park No. 6 for all those lots and that, in fact, those benefits are presently being realized.

IARE filed a response, and a brief in support, with the affidavits of two real estate experts. The record at that time already included the depositions of the original plaintiffs, J. Clark, and Wayne Johnson, as the corporate representative of Dawn Development Corporation.

The first affidavit filed by IARE was that of Ann Allison, who testified that she is a partner and the vice-president of a real estate appraisal firm. She testified that she had been appraising property since 1974. She stated that she had appraised Lot 16 in January of 1985 based upon the assumption that it would be developed for commercial use. She estimated that the value of Lot 16, if commercially developed, would be approximately $4,000,000. She stated that, in her opinion, any benefit that may have accrued to Lot 16 and the surrounding property by the single-family home deed restrictions no longer existed. She stated that development of Lot 16 in a non-commercial manner was not economically feasible, and that the highest and best use of the property would be as a commercial development. She stated that, if the property was not commercially developed, it would likely not be developed at all. She testified that there has been significant commercial development in the area adjacent to and surrounding Lot 16. Finally, she testified that a carefully planned use of Lot 16 would not damage the property values in the adjoining residential development, but that, in fact, a commercial use of the property would be more beneficial to the surrounding property than leaving it vacant.

IARE also presented two affidavits by Wallace Kimbrough, wherein he testified that he was a licensed, professional real estate market appraiser. He testified that he had inspected Lot 16 and that, in his opinion, the property would be worth $437,000 with the deed restrictions in place, and $4,000,000 without them. He stated that, in his opinion, removal of the deed restrictions would not reduce the value of the other lots in the subdivision, or otherwise injure them in any way. In his second affidavit, Kimbrough testified that, in his opinion, the deed restrictions restricting development of Lot 16 to single-family residences no longer benefited Lot 16 or any of the surrounding property, including the homes in the subdivision. He testified that Lot 16 had been rezoned by the City of Irving as commercial, and that any other kind of development on the property would be economically unfeasible.

The trial court granted summary judgment in favor of the homeowners, holding that the deed restrictions were valid and enforceable, and entered a permanent injunction ordering IARE to cease and desist from any violation of the deed restrictions.

In its first point of error, IARE claims that the trial court erred in granting the homeowners' motion for summary judgment because IARE presented evidence clearly demonstrating that there were genuine issues of material fact which precluded summary judgment. Summary judgment would be precluded if IARE had presented evidence legally sufficient to raise a fact issue that, because of changed conditions, the deed restrictions no longer secured the benefits for which they were intended. *Cowling v. Colligan*, 158 Tex. 458, 312 S.W.2d 943 (1958). Clark and Dawn, in their original petition, claimed that, because of changed conditions in the surrounding area, the deed restrictions no longer provided the benefits originally intended. The changed conditions pled by Clark and Dawn, and argued by IARE, were that (1) Belt Line Road, a four-lane major arterial street, was constructed along the eastern boundary of Lot 16; (2) a church was constructed on one of the re-

stricted lots in violation of the deed restrictions; (3) commercial and multi-family projects were developed immediately adjacent to Lot 16; and (4) there were also numerous violations of other deed restrictions in the area. The summary judgment evidence does not support IARE's contentions. First, the original plat of Plymouth Park shows that Belt Line Road existed as a two-lane road in 1966. The plat was intentionally designed to leave room so that the road could be expanded, as it was in 1972. Therefore, the existence of Belt Line Road as a four-lane street is not a "changed condition" since it was contemplated all along. Second, the record does not show that a church was constructed on one of the lots in violation of the deed restrictions. The affidavit of Thurma Davis established that no church was constructed on any restricted lot. The other undeveloped lot in Plymouth Park, besides Lot 16, is Lot 8, Block A, a *church-owned* lot. Wayne Johnson, testifying in depositions on behalf of the Dawn corporation, stated that this lot was church-owned, but that he did not know if the church building was actually on that lot. Lot 8, Block A is attached to the unrestricted Baptist Church lot which is also shown on the original plat.

Third, the summary judgment evidence did not show that any commercial development had occurred *immediately adjacent* to Lot 16. Lot 16 is bordered on the north by five vacant acres; to the south by Finley Road; to the east by Belt Line Road; and to the west by the Plymouth Park homes. Commercial development has occurred across Belt Line Road, including gas stations, grocery stores, and retail establishments, but not *immediately adjacent* to Lot 16. An apartment complex was built outside the restricted area across Finley Road, but again, this was not immediately adjacent to Lot 16. None of these changes are within the restricted area.

Fourth, there was no evidence of numerous violations of the deed restrictions. The affidavit of Thurma Davis conclusively established that 124 of the 126 lots in Plymouth Park were developed as single-family residences, and had been so for many years. Dawn, in the affidavit of Wayne Johnson, admitted that no major changes had occurred with respect to these homes. Furthermore, neither Dawn nor Clark knew of any homeowner violations of the restrictions.

■ The only remaining changed conditions are: the commercial development which is non-contiguous to the restricted area, the zoning change, and the increased value of Lot 16 if commercially developed. These conditions are not relevant to raise a fact issue as to whether the deed restrictions are still serving their purpose for the interior lots of the subdivision. In *Cowling v. Colligan*, 158 Tex. 458, 312 S.W.2d 943 (1958), the supreme court of Texas considered whether changed conditions, which affect a border lot but not the interior lots of a residential subdivision, were sufficient to show that the residential-only deed restrictions no longer served their purpose. The court stated:

Other than the advent of churches into the subdivision the *only* changed conditions found by the court lie *outside the subdivision.* Tract No. 2 is a border tract and is *openly exposed to those changed conditions,* but the majority view is that "if the benefits of the original plan for a restricted subdivision can still be realized for the protection of the interior lots, the restriction should be enforced against the border lots, *notwithstanding that such lot owners are deprived of the most valuable use of their lots."* [citations omitted] ...

The reasoning of courts is that if because of changed conditions outside the restricted area one lot or tract were permitted to drop from under the protective cover of residential-only restrictions, the owner of the adjoining lot would then have an equal claim on the conscience of the court, and, in due course, all other lots would fall like ten-pins, thus circumventing and nullifying the restriction and destroying the essentially residential character of the entire area.

312 S.W.2d at 946. This reasoning applies directly to the facts before us. The significant changed conditions cited by IARE are

those outside the restricted area. IARE argues, however, that the statement in Kimbrough's affidavit that, in his opinion, the deed restrictions no longer serve their purpose for the homes in Plymouth Park, raises a fact issue on that point. We disagree. Wayne Johnson, the corporate representative for Dawn Development Company, admitted in his deposition that the residential properties in Plymouth Park have been developed into single-family homes, and that there have not been any major changes in the subdivision as far as those homes are concerned. This testimony supports the conclusion that the character of Plymouth Park has remained the same: it is still a residential subdivision of single-family homes. Kimbrough's affidavit asserted *no facts* showing that the character of Plymouth Park itself has changed. The affidavit of Thurma Davis conclusively established that 124 of the 126 lots in Plymouth Park are developed as single-family homes, and that the remaining two lots are undeveloped. This evidence was uncontroverted. According to *Cowling*, if the only changed conditions cited are those lying *outside the subdivision*, then those changed conditions are insufficient to warrant removing the deed restrictions if the interior lots are still protected. 312 S.W.2d at 496. The summary judgment evidence conclusively established that the deed restrictions are indeed serving their purpose in Plymouth Park, and that the subdivision itself is basically unchanged.

IARE argues that Mrs. Davis' affidavit is not persuasive because she is an interested party and because she is not a real estate expert. We disagree. An affidavit by an interested party may be used as evidence to support a summary judgment if the testimony therein is clear, positive, direct, free from contradiction and the facts contained therein are readily controvertible. TEX.R.CIV.P. 166–A; *See Beaumont Enterprise & Journal v. Smith*, 687 S.W.2d 729 (Tex.1985). Mrs. Davis' affidavit meets these requirements.

■ As to the claim by IARE that Lot 16 was included in the deed restrictions by mistake, we are not persuaded. In their original pleadings, Dawn and Clark judicially admitted that "[a]t the time the subdivision was established, all lots in the subdivision were made subject to the deed restrictions herein noted." "The facts alleged or admitted in the live pleadings of a party are accepted as true by the court and jury and are binding on the pleader." *See Houston First American Savings v. Musick*, 650 S.W.2d 764, 767 (Tex.1983). Since Dawn and Clark made this judicial admission in their pleadings, it is binding upon them, and they may not claim mistake. The original plat, which has been on file with the deed records for over twenty years, also clearly indicates that Lot 16 was to be included in the deed restrictions.

■ Furthermore, the fact that the zoning has changed on Lot 16 does not abrogate the original building plan, nor does it terminate the building restrictions. *Lebo v. Johnson*, 349 S.W.2d 744, 751–52 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). The *Lebo* court, faced with a situation almost identical to that in the instant case, also held that deed restrictions would be enforced against a border lot if those restrictions still served their purpose with respect to the interior lots. 349 S.W.2d at 753. The fact that the owners of Lot 16 will be deprived of the most valuable use of their property is insufficient to void the restrictions which still benefit the interior lots. *Cowling*, 312 S.W.2d at 946. IARE cites a number of cases which hold that the increased value of the property as a commercial development, zoning changes, and increased traffic are factors to consider in evaluating the deed restrictions. *See Simon v. Henrichson*, 394 S.W.2d 249 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n.r.e.); *Stewart v. Valenta*, 361 S.W.2d 910, 915 (Tex.Civ.App.—Eastland 1962, writ ref'd n.r.e.); *Hemphill v. Cayce*, 197 S.W.2d 137 (Tex.Civ.App.—Forth Worth 1946, no writ). Notwithstanding these cases, we are persuaded that *Lebo* and *Cowling* are controlling. Both the *Lebo* and *Cowling* courts held, *as a matter of law*, based on the facts before them, that the deed restrictions were still serving their purpose with respect to the interior lots of the subdivision, and that the

restrictions were therefore enforceable. *Cowling*, 312 S.W.2d at 948; *Lebo*, 349 S.W.2d at 753. Therefore, we hold, as a matter of law, that the deed restrictions still secure the benefits intended for the interior lots at Plymouth Park. Accordingly, the trial court did not err in upholding those restrictions and granting summary judgment in favor of the homeowners. IARE's first point of error is overruled.

In its second point of error, IARE claims that the trial court erred in denying its motion to modify the temporary injunction after the temporary injunction was superseded by the final judgment. IARE claims that, *after final judgment* was entered, the homeowners continued to refuse to allow it to grade Lot 16 to alleviate problems with water impoundment and to lay subsurface utility lines to benefit adjoining property. When this occurred, IARE went back to the trial court and filed a motion to modify the superseded temporary injunction. To add to the confusion, the homeowners claim that the terms of the temporary injunction survived the final judgment and remain in effect on appeal. We disagree with both arguments.

■■■ A temporary injunction remains in force only until a final decree is rendered by the district court. *Texas City v. Community Public Service Company*, 534 S.W.2d 412, 414 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.) *citing City of Corpus Christi v. Cartwright*, 281 S.W.2d 343, 344 (Tex.Civ.App.—San Antonio 1955, no writ). The only purpose of a temporary injunction is to preserve the status quo of the subject matter of the suit pending a final trial of the case on the merits. *Texas City*, 534 S.W.2d at 414–15, *citing Transport Co. of Texas v. Robertson Transports*, 152 Tex. 551, 261 S.W.2d 549, 552 (1953). *See also Conway v. Irick*, 429 S.W.2d 648 (Tex.Civ.App.—Fort Worth 1968, writ ref'd); *Bryant v. Barnes*, 438 S.W.2d 435 (Tex.Civ.App.—Waco 1968, no writ), *City of Corpus Christi v. Cartwright*, 281 S.W.2d 343 (Tex.Civ.App.—San Antonio 1955, no writ); *McMurrey v. McMurrey*, 168 S.W.2d 944 (Tex.Civ.App.—Fort Worth 1943, no writ); *Rhoton v. Tex-*

*as Land & Mortgage Company*, 80 S.W.2d 763 (Tex.Civ.App.—Eastland 1935, writ ref'd). Since the temporary injunction expired upon entry of final judgment, the trial court did not err in refusing to modify the temporary injunction. The homeowners' argument that the temporary injunction is still in force is erroneous. We hold that the final judgment entered by the trial court superseded the temporary injunction, and that the temporary injunction is no longer in force.

In connection with the above holding, we find it necessary to comment on the 1961 decision of this court in *Dallas Cowboys Football Club, Inc. v. Harris*, 348 S.W.2d 37 (Tex.Civ.App.—Dallas 1961, no writ). The homeowners argue that that case held that a temporary injunction survived the final judgment of the trial court and remained in effect while the case was on appeal. The holding in *Dallas Cowboys* should be limited to the facts in that case. *Dallas Cowboys* was a direct appeal from a temporary injunction, which was then consolidated with the appeal from the trial court's final judgment. A supersedeas bond had been filed, suspending the trial court's final judgment. The court of appeals in that case reversed the trial court's final judgment, which was contrary to the temporary injunction, and remanded the case for a new trial. 348 S.W.2d at 40–41, 47. While the holding at 348 S.W.2d at 40 appears to be overbroad, in effect that court of appeals resurrected the temporary injunction in order to maintain the status quo while the case was on remand. The unusual facts of that case make it unique. The following statement by the *Dallas Cowboys* court persuades us that that court would agree with our holding today:

In the absence of an appeal and supersedeas the judgment on the merits by the trial court would have had the legal effect of dissolving the temporary injunction.

348 S.W.2d at 40. Therefore, we have determined that our holding is not in conflict with *Dallas Cowboys*.

IARE's second point of error is overruled.

Affirmed.